# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | | |
|---|---|---|
| CHRISTOPHER A. JONES, | ) | |
| Plaintiff, | ) | 3:10-cv-00162-LRH-VPC |
| vs. | ) | **ORDER** |
| HOWARD SKOLNIK, *et al.*, | ) | |
| Defendants. | ) | |

This a *pro se* civil rights action filed pursuant to 42 U.S.C. § 1983, by a Nevada state prisoner. In this order, the Court resolves pending motions and screens the first amended complaint pursuant to 28 U.S.C. § 1915A(a).

**I. Procedural History and Motions**

Plaintiff filed a *pro se* civil rights complaint on February 4, 2010, in the Seventh Judicial District Court of the State of Nevada in the County of White Pine. (Docket #1, Exhibit A). Defendants Howard Skolnik, Brian Williams, James G. Cox, and Yaqub Mustafaa were served with the complaint on February 22, 2010. Defendants filed a Notice of Removal in this Court on March 23, 2010. (Docket #1). Defendants filed a motion to extend time to answer the complaint, pending screening by this Court. (Docket #3). Good cause appearing, the motion is granted.

On April 29, 2010, plaintiff filed a "Motion to Affix Exhibits from Original Pleading to Amended Pleading." (Docket #6). Plaintiff's amended civil rights complaint is attached to the motion. (Docket #6-1). Exhibits are also attached. (Docket #6-2). The Court construes this as a motion to amend the complaint.

Defendants filed a response to plaintiff's motion. (Docket #7). In their opposition papers, defendants urge this Court to dismiss this case based on plaintiff's notice of voluntary dismissal which was filed in state district court. Plaintiff explains in his reply that his intent in filing the notice of voluntary dismissal was to proceed in federal court and not in state court. (Docket #9, at p. 2). As such, the Court will not dismiss this action based on plaintiff's state court notice of voluntary dismissal.

Regarding plaintiff's motion to amend, Rule 15 provides: "A party may amend his pleading once as a matter of course within 21 days after service of a responsive pleading, or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. Federal Rule of Civil Procedure 15(a)(1)(B)." There being no responsive pleading or Rule 12 motion brought, plaintiff was entitled to file an amended complaint. Plaintiff's April 29, 2010 motion (Docket #6) is granted.

More recently, on November 22, 2010, plaintiff filed a second motion to amend, with an attached second amended complaint. (Docket #12). Rule 15 provides that "In all other cases a party may amend its pleading only . . . with the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal. *See Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991). In the instant case, the second amended complaint is an exact copy of the first amended complaint, with the addition of Count VIII, at pp. 52-64. As discussed later in this order, Ground VIII fails to state a cognizable claim and is dismissed with prejudice. As such, the Court has determined that the interests of justice do not require granting plaintiff's November 22, 2010 motion to amend. As such, this action proceeds on the first amended complaint. (Docket #6-1). In this order, the Court screens the first amended complaint.

**II. Screening Pursuant to 28 U.S.C. § 1915A**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1),(2). *Pro se*

pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d. 696, 699 (9th Cir. 1988). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act of 1995 (PLRA), a federal court must dismiss a prisoner's claim, "if the allegation of poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d. 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Laboratory Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.; see Papasan v. Allain*, 478 U.S.

3

265, 286 (1986).

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

Finally, all or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

**III. First Amended Complaint (Docket #6-1)**

Plaintiff names the following defendants in the first amended complaint: Nevada Department of Corrections (NDOC) Director Howard Skolnik, Southern Desert Correctional Center Warden Brian Williams, Correctional Sergeant Yaqub Mustafaa, Senior Correctional Officer Berry, Correctional Sergeant Schultz, Senior Correctional Officer Landis, Correctional Trainee Tackwell, Deputy Attorney General Janet Traut, Management Analyst Melanie Mason, Shell Zappittini, and Ely State Prison Warden E.K. McDaniel. Plaintiff seeks declaratory and injunctive relief, as well as damages.

**A. Plaintiff's Allegations**

Plaintiff begins his first amended complaint with a recitation of facts, summarized as follows: On June 1, 2007, while incarcerated at the Southern Desert Correctional Center, defendant Schultz approached plaintiff's cell. Defendant Schultz told plaintiff that his cell was not in proper order. Specifically, Schultz told plaintiff that the bunk must be placed closest to the cell door,

4

instead of having a T.V. stand closest to the cell door. Plaintiff contends that there is no such rule regarding the arrangement of cells. Plaintiff opines that, based on timing, defendant Schultz approached his cell regarding its arrangement in retaliation for plaintiff having filed a grievance against a correctional officer on May 28, 2007. Plaintiff voiced his belief that there was no such rule regarding cell arrangement to defendant Schultz. Defendant Schultz then asked to see plaintiff's identification. Plaintiff stepped toward Schultz to hand him his identification and Schultz stated "don't be walking up on me like that!" Plaintiff was ordered out of the cell, handcuffed, and taken to an activity room. Defendant Schultz and another officer then lectured plaintiff about making an aggressive move toward prison staff.

Later, two officers took plaintiff back to his cell, when he discovered that his cell had been "severely trashed." Defendant Berry stood outside of plaintiff's cell and told him to pick up the mess and turn his bunk around. Plaintiff alleges that he complied. Plaintiff alleges that officers under the direction of defendant Schultz had "dumped out all my boxes of legal work onto the floor and trampled it under foot as well as other items of personal property and clothes."

Plaintiff asked defendant Berry the names of the officers who trampled his personal property. Defendant Berry then directed plaintiff to step out of the cell. Plaintiff stepped out of the cell and placed his hands on the wall. Plaintiff alleges that he was not in an aggressive or resistant posture. Defendant Schultz then shouted "take him down," and several officers slammed plaintiff to the floor. Plaintiff alleges that as officers piled on him, defendant Landis maliciously bent his right arm and wrist, which caused plaintiff pain, particularly because plaintiff had a preexisting injury (described by plaintiff as a reconstructed right shoulder). Plaintiff alleges that, while he lay limp on the floor, in pain and not resisting, defendant Schultz had his knee on plaintiff's head and neck. Plaintiff alleges that he was then "picked up face down by several officers and taken outside of Unit 3 and slammed/thrown head first into a cart parked outside the unit door." Plaintiff was then taken to the medical unit, was seen by a nurse, and given Tylenol for pain in his shoulder and back. Plaintiff received an administrative segregation notice on June 2, 2007, and he remained in administrative segregation until July 30, 2007. (First Amended Complaint (FAC), at ¶¶ 1-33).

///

**B. Count I**

Plaintiff entitles Count I as follows: "Arbitrary and capricious denial of identified witness for reasons unrelated to prison safety or security which exceeded scope of maintaining reasonable control of disciplinary hearing, violating the 14th amend." (FAC, at p. 7). Plaintiff was charged with several disciplinary violations including assault, disobedience of an order, threats, battery, and abusive language. Plaintiff's disciplinary hearing on the charges was July 30, 2007, and defendant Mustafaa was the hearing officer. Plaintiff alleges a violation of his due process rights.

In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. In *Sandin v. Connor*, 515 U.S. 472, 487 (1995), the Supreme Court abandoned earlier case law which had held that states created protectable liberty interests by way of mandatory language in prison regulations. *Id*. Instead, the Court adopted an approach in which the existence of a liberty interest is determined by focusing on the nature of the deprivation. *Id*. In doing so, the Court held that liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484.

A prisoner has a liberty interest when confinement imposes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. In *Sandin*, the Court focused on three factors in determining that plaintiff possessed no liberty interest in avoiding disciplinary segregation: (1) disciplinary segregation was essentially the same as discretionary forms of segregation; (2) a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no "major disruption in his environment;" and (3) the length of the plaintiff's sentence was not affected. *Sandin*, 515 U.S. at 486-87.

Where a protected liberty interest exists, the Supreme Court has set out the following procedural due process requirements for disciplinary detention of a prisoner: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to

6

1 call witnesses in his defense, when permitting him to do so would not be unduly hazardous to
2 institutional safety or correctional goals; (5) legal assistance to the prisoner where the prisoner is
3 illiterate or the issues presented are legally complex. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

Plaintiff alleges that at the disciplinary hearing, he requested as a witness his cell mate at the time of the incident, Robert Walker. Apparently, inmate Walker was housed in general population, and the disciplinary hearing took place in a restricted area of the prison. On this basis, defendant Mustafaa found that inmate Walker was unavailable to testify at the hearing. Plaintiff contends that inmate Walker's testimony should have been made available via telephone, as is contemplated in Administrative Regulation 707. Plaintiff was found guilty at the disciplinary hearing and was given 18 months of disciplinary segregation at Ely State Prison and a 365-day loss of good-time credits. The Court finds that plaintiff states a cognizable due process claim based on the denial of his requested witness, Robert Walker, at the disciplinary hearing. The due process claim in Count I may proceed against defendant Mustafaa.

**C.  Count II**

Plaintiff entitles Count II as follows: "Participating in deliberate indifference to and ratifying constitutional violations and refusing to correct notwithstanding actual knowledge, duty, and opportunity to act violating the 14th Amendment." (FAC, at p. 31). Plaintiff alleges that defendants Williams, Cox, and Skolnik "are high ranking NDOC officials that directly participate in or oversee disciplinary processes and actions of their subordinate hearing officers . . . ." Plaintiff alleges that defendants Williams, Cox, and Skolnik were "deliberately indifferent to the unconstitutional acts of their subordinates."

The United States Supreme Court rejected the idea that "knowledge and acquiescence" of subordinates' conduct is enough to hold supervisory officials liable under § 1983. *Ashcroft v. Iqbal*, 129 S.Ct. at 1949. "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* Plaintiff fails to state a cognizable civil rights claim against defendants Williams, Cox, and Skolnik. These defendants are dismissed with prejudice, along with the entirety of Count II.

///

7

**D.  Count III**

Plaintiff entitles Count III as follows:  "Retaliation for inferring an intent to seek legal recourse by using unnecessary force to cause unnecessary pain in violation of the 1st, 8th, and 14th Amendments of the U.S. Constitution."  (FAC, at p. 33).  Plaintiff incorporates by reference the allegations made at the beginning of the complaint, at paragraphs 1-31.  It appears that plaintiff is making claims of retaliation, use of excessive force, and unlawful cell search.

**1.  Retaliation**

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim.  *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989).  To state a cognizable claim, plaintiff must allege that defendants acted to retaliate for his exercise of a protected activity, and defendants' actions did not serve a legitimate penological purpose.  *See Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).  A plaintiff asserting a retaliation claim must demonstrate a "but-for" causal nexus between the alleged retaliation and plaintiff's protected activity (i.e., filing a legal action).  *McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979); see Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977).  The prisoner must allege facts, either direct or circumstantial, to establish a link between the exercise of constitutional rights and the allegedly retaliatory action.  *Pratt*, 65 F.3d at 806.

In the instant case, plaintiff has alleged that the events of June 1, 2007, including the search of his cell, subsequent altercation with correctional staff, and charges brought against him were carried out in retaliation for plaintiff having previously filed inmate grievances in late May 2007. Specifically, plaintiff asserts that, based on timing, defendant Schultz approached his cell, carried out a cell search, and participated in a physical altercation with plaintiff, in retaliation for plaintiff having filed a grievance against a correctional officer on May 28, 2007.  Plaintiff has alleged sufficient facts to allow the retaliation claim to go forward against defendant Schultz.

**2.  Excessive Force**

When a prison official stands accused of using excessive physical force in violation of the cruel and unusual punishment clause of the Eighth Amendment, the question turns on whether force

was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). In determining whether the use of force was wanton and unnecessary, it is proper to consider factors such as the need for application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 7. Although an inmate need not have suffered serious injury to bring an excessive force claim against a prison official, the Eighth Amendment's prohibition on cruel and unusual punishments necessarily excludes from constitutional recognition *de minimus* uses of physical force. *Id.* at 9-10.

Plaintiff alleges that on June 1, 2007, a physical altercation occurred between himself and several correctional officers. Specifically, plaintiff alleges that defendant Berry directed plaintiff to step out of his cell, and plaintiff complied, placing his hands on the wall outside his cell. Plaintiff alleges that he was not in an aggressive or resistant posture. Defendant Schultz then shouted "take him down," and several officers slammed plaintiff to the floor. Plaintiff alleges that as officers piled on him, defendant Landis maliciously bent his right arm and wrist, which caused plaintiff pain. Plaintiff alleges that, while he lay limp on the floor, in pain and not resisting, defendant Schultz had his knee on plaintiff's head and neck. Plaintiff alleges that he was then "picked up face down by several officers and taken outside of Unit 3 and slammed/thrown head first into a cart parked outside the unit door." Plaintiff has alleged sufficient facts to state a cognizable Eighth Amendment claim for excessive force. The excessive force claim may proceed against defendants Berry, Schultz, and Landis.

### 3.  Cell Search

Plaintiff complains that his cell was searched on June 1, 2007, and that the cell was left disheveled. Plaintiff fails to state a cognizable claim regarding the search of his prison cell, as prisoners have no Fourth Amendment right of privacy in their cells. *See Hudson v. Palmer*, 468 U.S. 517, 525-26 (1984). The claim regarding the search of plaintiff's cell is dismissed with prejudice.

///

### E. Count IV

Plaintiff entitles Count IV as follows: "Retaliation for expressing an intent to seek legal recourse by way of subjecting plaintiff to false disciplinary charges to cover up and obscure unnecessary force violating the 1st, 5th, and 14th Amend." (FAC, at p. 36). Plaintiff incorporates by reference the allegations made at the beginning of the complaint, at paragraphs 1-31 and 34-40. Plaintiff alleges that defendant Tackwell and Berry charged him with rule violations stemming from the events of June 1, 2007. Plaintiff alleges that the charges were fraudulent and were brought as a cover-up for the use of excessive force against him on the same date. Plaintiff states a viable due process claim against defendants Tackwell and Berry for bringing fraudulent charges against him. Count IV may proceed against defendants Tackwell and Berry.

### F. Count V

Plaintiff entitles Count V as follows: "Subjecting plaintiff's trust account to deductions, and or, excessive deductions without due process of law violating the 14th Amend." (FAC, at p. 37). Plaintiff alleges that defendant Deputy Attorney General Janet Traut violated his rights regarding plaintiff's award of costs in another case plaintiff filed in this Court, 3:03-cv-00276-HDM-VPC. Plaintiff was awarded costs of $93.33 and nominal damages of $1.00 in that case. (Docket #201 and #251 in 3:03-cv-00276-HDM-VPC).

Plaintiff now brings action against Deputy Attorney General Traut because she sent a check in the amount of $94.33 to the Nevada Department of Corrections, in satisfaction of the costs and nominal damages awarded to plaintiff. In the accompanying letter, dated January 11, 2008, Traut states that: "The award of costs may be posted against whatever costs have been advanced to Inmate Jones for his litigations." (Plfs' Exhibit, Docket #6-2, at p. 28). Plaintiff objects to the portion of Traut's letter directing Melanie Mason, employee of Inmate Services in the Department of Corrections, to post the check against any litigation costs that had been advanced to plaintiff. Plaintiff also brings action against Melanie Mason for posting money from his costs award against costs advanced to him by the Department of Corrections. Prisoners have a constitutionally protected property right to funds in their inmate accounts, including interest. *See Schneider v. Cal. Dep't of Corr.*, 345 F.3d 716. 720 (9th Cir. 2003); *McIntyre v. Bayer*, 339 F.3d 1097, 1099-1100 (9th Cir.

2003). To the extent that plaintiff is alleging that funds were unjustifiably deducted from his prison trust fund account, plaintiff states a cognizable claim. Count V may proceed against defendants Traut and Mason.

**G.  Count VI**

Plaintiff entitles Count VI as follows: "Failure or refusing to provide adequate cleaning implements and disinfectants to clean a filthy cell, or failing to adhere to policy and clean prior to re-occupation in violation of 8th and 14th Amend." (FAC, at p. 43). Plaintiff alleges that on September 16, 2008, when he arrived at Ely State Prison, he was placed in a cell that was "filthy." Plaintiff describes the cell as having dirt and trash on the floor; the sink and toilet were not clean; and the walls were dirty. Plaintiff complained to unidentified officers, who brought him paper towels and Ajax cleaner. Plaintiff complains that he was not given a broom, mop, disinfectant, or rubber gloves to wear while cleaning the cell.

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Id.*; *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982). The condition that plaintiff complains of – the failure to provide specific cleaning implements to clean a dirty cell – does not rise to the level of an Eighth Amendment violation. The conditions did not pose an undue risk to plaintiff's health and safety. Count VI is dismissed with prejudice.

**H.  Count VII**

Plaintiff entitles Count VII as follows: "Challenging the constitutionality of AR 707(2)(B)(12)(b) as in conflict with federal due process entitlements announced in *Wolff v. McDonnell*, 418 US. 539, S.Ct. 2963 (1974)." (FAC, at p. 48). It appears that plaintiff is challenging AR 707.1, Inmate Disciplinary Manual, at numbered item 12(b). This provision states that, in reaching a decision at a disciplinary hearing: "Guilt or innocence shall be determined solely on the evidence presented at the hearing or reviewed prior to the hearing by the Disciplinary Hearing

11

1  Officer." Plaintiff asserts that the provision allowing review prior to the hearing violates his due
2  process rights under *Wolff v. McDonnell*, 418 US. 539 (1974).

3  Where a protected liberty interest exists, the Supreme Court has set out the following
4  procedural due process requirements for disciplinary detention of a prisoner: (1) written notice of the
5  charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of
6  the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders
7  of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to
8  call witnesses in his defense, when permitting him to do so would not be unduly hazardous to
9  institutional safety or correctional goals; (5) legal assistance to the prisoner where the prisoner is
10 illiterate or the issues presented are legally complex. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

11 In the instant case, the provision about which plaintiff complains does not violate *Wolff v.*
12 *McDonnell*, 418 U.S. at 556. There is no constitutional prohibition on disciplinary hearing officers
13 reviewing evidence prior to the hearing. As such, Count VII is dismissed with prejudice.

14 **I. Count VIII of the Second Amended Complaint**

15 Plaintiff entitles Count VIII as follows: "Retaliation for prevailing in a civil rights action and
16 conspiracy in aid of retaliation through engineering false claims and inventing non-existent criteria
17 to deny a transfer although the plaintiff met all criteria and NDOC's own points criteria qualified the
18 plaintiff medium custody, violations of 1st and 14th Amend." (Second Amended Compl., at p. 52).
19 Plaintiff, who is incarcerated at Ely State Prison, alleges that he sought a transfer to a medium-
20 security prison. Plaintiff alleges that defendants Zappittini and McDaniel denied his request for a
21 transfer. Prisoners have no liberty interest in being transferred to another prison. *See Olim v.*
22 *Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 225-27 (1976); *United*
23 *States v. Brown*, 59 F.3d 102, 105 (9th Cir. 1995) (per curium). Regarding the claim of retaliation,
24 plaintiff has not alleged a causal nexus between the denial of his request for a transfer and the
25 exercise of a protected right. Moreover, to the extent that plaintiff alleges that his transfer was
26 denied because he prevailed in a civil rights lawsuit against the Department of Corrections, this
27 allegation is implausible and does not support a claim of retaliation. *See Ashcroft v. Iqbal*, 129 S.Ct.
28 1937, 1950 (2009). As such, plaintiff fails to state a cognizable retaliation claim. Count VIII is

dismissed with prejudice.

## IV.  Conclusion

**IT IS THEREFORE ORDERED** that defendants' motion to extend time pending the screening (Docket #3) is **GRANTED.**

**IT IS FURTHER ORDERED** that plaintiff's November 22, 2010 motion to amend (Docket #12) is **DENIED.**

**IT IS FURTHER ORDERED** that plaintiff's April 29, 2010 motion to amend (Docket #6) is **GRANTED.**

**IT IS FURTHER ORDERED** that this action **PROCEEDS** on the first amended complaint (Docket #6-1).

**IT IS FURTHER ORDERED** that the following counts of the first amended complaint are **DISMISSED WITH PREJUDICE**:

1. Count II is dismissed in its entirety.
2. Count III, the claim regarding the search of plaintiff's cell, is dismissed.
3. Count VI is dismissed in its entirety.
4. Count VII is dismissed in its entirety.
5. Count VIII (of the second amended complaint) is dismissed in its entirety.

**IT IS FURTHER ORDERED** that the following defendants are **DISMISSED FROM THIS ACTION WITH PREJUDICE**: **Williams, Cox, Skolnik, McDaniel, and Zappittini.**

**IT IS FURTHER ORDERED** that the following counts of the first amended complaint **MAY PROCEED**:

1. In Count I, the due process claim concerning the denial of a witness at the disciplinary hearing may proceed against defendant Mustafaa.
2. In Count III, the retaliation claim may proceed against defendant Schultz.
3. In Count III, the excessive force claim may proceed against defendants Berry, Schultz, and Landis.
4. In Count IV, the due process claim may proceed against defendants Tackwell and Berry.
5. In Count V, the takings claim may proceed against defendants Traut and Mason.

...

**IT IS FURTHER ORDERED** that the Clerk **shall electronically serve a copy of this order, including the attached Intent to Proceed with Mediation Form, along with a copy of plaintiff's first amended complaint (Docket #6-1), on the Office of the Attorney General of the State of Nevada, attention Pamela Sharp**. The Attorney General shall advise the Court within **twenty-one (21) days** of the date of entry of this order whether they can accept service of process for the named defendants and the last known address under seal of the defendants for which they cannot accept service. If the Attorney General accepts service of process for any named defendant(s), such defendant(s) shall file and serve an answer or other response to the first amended complaint within **thirty (30) days** of the date of the notice of acceptance of service.

**IT IS FURTHER ORDERED** that if the Attorney General does not accept service of process for any named defendant(s), then plaintiff must file a motion identifying the unserved defendant(s), requesting issuance of summons for the unserved defendant(s), and specifying the full name(s) and address(es) of the unserved defendant(s). Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, service must be accomplished within one hundred twenty (120) days of the date the complaint is filed.

**IT IS FURTHER ORDERED** that the parties **SHALL DETACH, COMPLETE, AND FILE** the attached Intent to Proceed with Mediation Form on or before **thirty (30) days** from the date of entry of this order.

**IT IS FURTHER ORDERED** that henceforth, plaintiff shall serve upon defendants, or, if an appearance has been made by counsel, upon their attorney(s), a copy of every pleading, motion, or other document submitted for consideration by the Court. Plaintiff shall include with the original paper submitted for filing a certificate stating the date that a true and correct copy of the document was mailed to the defendants or counsel for defendants. If counsel has entered a notice of

///
///
///
///
///

1 appearance, the plaintiff shall direct service to the individual attorney named in the notice of
2 appearance, at the address stated therein.  The Court may disregard any paper received by a district
3 judge or a magistrate judge that has not been filed with the Clerk, and any paper which fails to
4 include a certificate showing proper service.

5 Dated this 27th day of December, 2010.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

_____
Name
_____
Prison Number
_____
Address
_____
_____

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

_____, )   Case No. _____
               Plaintiff,   )
                             )
v.                            )   **NOTICE OF INTENT TO**
                             )   **PROCEED WITH MEDIATION**
_____ )
_____ )
              Defendants.  )
_____)

      This case may be referred to the District of Nevada's early inmate mediation program. The purpose of this notice is to assess the suitability of this case for mediation. Mediation is a process by which the parties meet with an impartial court-appointed mediator in an effort to bring about an expedient resolution that is satisfactory to all parties.

1. Do you wish to proceed to early mediation in this case? ____ Yes  ____ No

2. If no, please state the reason(s) you do not wish to proceed with mediation? _____
   _____
   _____
   _____

3. List any and all cases, including the case number, that plaintiff has filed in federal or state court in the last five years and the nature of each case. (Attach additional pages if needed).
   _____
   _____
   _____

4. List any and all cases, including the case number, that are currently pending or any pending grievances concerning issues or claims raised in this case. (Attach additional pages if needed).
   _____
   _____

_____

_____

5.  Are there any other comments you would like to express to the court about whether this case is suitable for mediation. You may include a brief statement as to why you believe this case is suitable for mediation. (Attach additional pages if needed).

_____

_____

_____

_____

**This form shall be filed with the Clerk of the Court on or before thirty (30) days from the date of this order.**

<u>Counsel for defendants</u>: By signing this form you are certifying to the court that you have consulted with a representative of the Nevada Department of Corrections concerning participation in mediation.

Dated this ____ day of _____, 20____.

_____
Signature

_____
Name of person who prepared or
helped prepare this document