1    **UNITED STATES DISTRICT COURT**

2    **DISTRICT OF NEVADA**

3

4    CHRISTOPHER A. JONES,                      3:10-cv-00162-LRH-VPC

5                              Plaintiff,

6       v.                                      **REPORT AND RECOMMENDATION**

7                                               **OF U.S. MAGISTRATE JUDGE**

8    HOWARD SKOLNIK, *et al.,*

9                              Defendants.

10

11          This Report and Recommendation is made to the Honorable Larry R. Hicks, United States

12   District Judge.   The action was referred to the undersigned Magistrate Judge pursuant to 28

13   U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court are defendants' motions to dismiss, the

14   first pertaining to defendants Williams and Cox (#387), and the second to defendant Skolnik

15   (#414). Plaintiff opposed each motion (#s 407, 419), and defendants replied to each opposition

16   (#s 408, 421).  Also before the court are defendants' related motions to stay discovery (#s 387,

17   415).  For the reasons stated below, the court recommends that the motions be denied.

18                        **I.      BACKGROUND**

19          This case has languished in federal court since 2010.  For brevity, the court discusses

20   only the factual allegations and procedural history relevant to defendants' motions.  Christopher

21   Jones ("plaintiff") is an inmate in the custody of the Nevada Department of Corrections

22   ("NDOC").  He is presently incarcerated at Northern Nevada Correctional Center in Carson City,

23   Nevada, but the alleged events underlying his claims occurred during a period of incarceration at

24   Southern Desert Correctional Center ("SDCC") in Indian Springs, Nevada.   Acting *pro se*,

25   plaintiff brings civil rights claims under 42 U.S.C. § 1983 against several NDOC and SDCC

26   officials, including SDCC Warden Brian Williams ("Williams"), NDOC Assistant Director James

27

28

1   Greg Cox ("Cox"), and NDOC Director Howard Skolnik ("Skolnik").[1]   (#16 at 2.)   Williams,

2   Cox, and Skolnik ("defendants") were dismissed from this case on December 28, 2010 by the

3   District Court's screening order (#15), but they were added to the lawsuit by the District Court

4   once again on June 4, 2014.  (*See* #315.)  In short, the basis for the Court's decision was the Ninth

5   Circuit's clarification, in *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011), of supervisory liability in

6   § 1983 actions.

7        In Count II, plaintiff alleges that defendants violated the Fourteenth Amendment's due

8   process guarantees.[2]   The claim originates from the alleged decision of a prison official, Yaqub

9   Mustafaa, to deny plaintiff's request for witness testimony during a prison disciplinary hearing.

10   Plaintiff contends that "defendants Williams, Cox, and Skolnik are high ranking NDOC officials

11   that directly participate in, or oversee, disciplinary processes and actions of their subordinate

12   hearing officers."   (*Id*. at 31.)   More specifically, he states that, "[a]ccording to NDOC

13   Administrative Policy, Defendant Williams, as Warden, is the first line of disciplinary oversight

14   and thus, directly participated in the disciplinary process by way of his standing authority to

15   review the action of his subordinates hearing officers and [to] make proper corrections."  (#16 at

16   22.)  "On August 1, [2007], the plaintiff provided defendant Williams with actual notice of the

17   due process violations committed by his subordinate (hearing officer Sgt. Yaqub Mustafaa) by

18   way of [grievance] appeal #2006-264-1251."  (*Id*.)  Nevertheless, Williams denied the grievance

19   on September 4, 2007.  (*Id*.)

20        Plaintiff further alleges that, on October 16, 2007, defendant "James Cox denied [a second

21   level] grievance adopting/reiterating the statements made by Warden Williams and likewise

22   ratifying the denial of [plaintiff's witness] . . . ." (*Id*. at 23.)  On October 10, 2007, "the plaintiff

23   took an additional step to gain impartial review of the issues by sending a letter and a copy of all

24

25

26   _____

27   [1]  Between the commencement of this action and the present date, Skolnik has retired from the
    NDOC and Cox has replaced him as Director.

28   [2]  Several additional counts remain in this case (*see* #15), but the court omits discussion of these
    claims because they are not at issue in defendants' motions.

1  documents to director of [the] NDOC, Howard Skolnik . . . ."  (*Id.*)  On November 29, 2007,

2  "Director Skolnik drafted an answer, likewise ratifying the denial of the witness . . . ."  (*Id.* at 24.)

3  ## II.   LEGAL STANDARD

4       Federal Rule of Civil Procedure ("FRCP") 12(b) identifies several bases for dismissal of a

5  plaintiff's complaint.   First, Rule 12(b)(5) permits a defendant to dismiss on the basis that the

6  plaintiff has failed to comply with the service requirements prescribed in Rule 4.   Second,

7  because federal courts are courts of limited jurisdiction, *Owen Equip. & Erection Co. v. Kroger*,

8  437 U.S. 365, 374 (1978), FRCP 12(b)(1) demands that the court dismiss a case when it lacks

9  subject matter jurisdiction.   Jurisdiction is absent for the purposes of Rule 12(b)(1) when a

10  plaintiff sues a sovereign, such as a state, which has not waived its sovereign immunity.   *See*

11  *Cassirer v. Kingdom of Spain*, 616 F.3d 1019, 1026 (9th Cir. 2010).

12       Third, the court may dismiss under FRCP 12(b)(6) for failure to state a claim upon which

13  relief can be granted, which is a question of law.   *North Star Int'l v. Ariz. Corp. Comm'n*, 720

14  F.2d 578, 580 (9th Cir. 1983).   The court grants dismissal pursuant to Rule 12(b)(6) when the

15  complaint fails to "state a claim for relief that is plausible on its face."   *Bell Atl. Corp. v.*

16  *Twombly*, 550 U.S. 544, 570 (2007).   When analyzing a motion under Rule 12(b)(6), courts

17  accept as true all well-pled factual allegations, set aside legal conclusions, and verify that the

18  factual allegations state a plausible claim for relief.   *Ashcroft v. Iqbal*, 556 U.S. 662, 679.   The

19  complaint is construed in a light most favorable to the plaintiff.   *Chubb Custom Ins. Co. v. Space*

20  *Systems/Loral Inc*., 710 F.3d 946, 956 (9th Cir. 2013).   The court takes particular care when

21  reviewing the pleadings of a pro se party, for a more forgiving standard applies to litigants not

22  represented by counsel.   *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010).   At bottom,

23  although the complaint need not contain detailed factual allegations under the pleading

24  requirements of Rule 8(a), it must offer more than "a formulaic recitation of the elements of a

25  cause of action."   *Twombly*, 550 U.S. at 555.

26       Finally, beyond the purported insufficiency of the pleading, defendants may also move to

27  dismiss under Rule 12(b)(6) on the ground that, under the alleged facts, defendants are immune

28

1    from suit under the qualified immunity doctrine.  *See Hydrick v. Hunter*, 669 F.3d 937 (9th Cir.

2    2012).   Qualified immunity is a question of law, unless the doctrine's application turns on

3    unresolved factual issues. *See Torres v. City of Los Angeles*, 548 F.3d 1197, 1210-11 (9th Cir.

4    2008).

### III.    DISCUSSION

6    Defendants Williams, Cox, and Skolnik move for dismissal on five bases: (1) plaintiff has

7    failed to invoke the state's statutory sovereign immunity waiver; (2) plaintiff failed to personally

8    serve defendants; (3) plaintiff voluntarily dismissed this case in state court; (4) plaintiff's

9    complaint is insufficiently pled; and (5) Skolnik is entitled to qualified immunity.  (#387 at 6-18;

10   #414 at 6-23.)  The court considers each argument below.

**A.    Waiver of Sovereign Immunity**

12   Defendants first argue that plaintiff failed to invoke the State of Nevada's waiver of

13   sovereign immunity.   Specifically, they argue that plaintiff did not name the State in his

14   complaint, which was filed in the Seventh Judicial District Court instead of the Eighth Judicial

15   District Court (where the events underlying this case occurred) or in Carson City, and he also

16   failed to serve the Attorney General's Office.  Because each of these requirements must be met

17   for a plaintiff to enjoy Nevada's sovereign immunity waiver, defendants argue that the court lacks

18   jurisdiction to hear this case.  (#387 at 6-9; #414 at 6-9.)  Their argument lacks merit and provides

19   no reason for dismissal because plaintiff was not required to invoke the statutory sovereign

20   immunity waiver to bring an action under § 1983 against defendants in their individual capacities.

21   Nevada Revised Statute ("NRS") 41.0337(1) bars any "tort action arising out of an act or

22   omission with scope of a person's public duties or employment . . . [as an] Officer of employee of

23   the State or of any political subdivisions . . . unless the State or appropriate political subdivision is

24   named a party defendant under NRS 41.031."  NRS 41.031 mandates that the plaintiff name the

25   State and/or appropriate division, serve upon the Nevada Attorney General a summons and copy

26   of the complaint, and file "in the county where the cause or some part thereof arose or in Carson

27   City."  Only if these requirements are satisfied does the state waive its sovereign immunity from

28

suit.   NRS 41.031(1).   Under the express terms of the statute, however, the State retains all immunity from suit conferred by the Eleventh Amendment of the U.S. Constitution.   NRS 41.031(3).

Plaintiff was not required to invoke the sovereign immunity waiver because defendants, each sued in their individual capacities, do not enjoy Nevada's sovereign immunity.   Defendants might have argued for dismissal on the basis of noncompliance with NRS 41.031 in state court, but the argument likely would have failed.   In *Hernandez v. Palmer*, the Nevada Supreme Court issued an unpublished decision in which it rejected the precise argument that defendants raise here: that an inmate plaintiff bringing a civil rights action under § 1983 must comply with NRS 41.0131 to enjoy the state's sovereign immunity waiver.   No. 58353, 2013 WL 5373516, at *2 (Nev. Sept. 19, 2013).   Relying on *Will v. Michigan Department of State Police*, 491 U.S. 58, 64-70 (1989), the Nevada Supreme Court observed that, although the State of Nevada can never be a proper defendant in § 1983 actions, state officials sued in their individual capacities are proper defendants to such claims.   Thus, the Court concluded that "NRS 41.031 and NRS 41.0337 *necessarily do not apply* to 42 U.S.C. § 1983 actions."   *Id*. at *3 (emphasis added).   In other words, the statutory sovereign immunity waiver exists to allow private citizens to bring tort actions against the State and its officials who act in their official capacities; its purpose is not to enact procedural hurdles in lawsuits against state officials sued under federal law as individuals for their alleged civil rights violations.

Because *Hernandez* is not precedential authority, this court considers the question independently and concludes that the sovereign immunity waiver requirements are inapplicable to federal constitutional torts.   In Nevada, statutes are to be read to avoid rendering their language superfluous, and also in harmony with other statutes.   *In re George J.*, — Nev. —, 279 P.3d 187, 189-90 (2012).   With these principles in mind, the better reading of NRS 41.0337's reference to "torts" is one that excludes constitutional torts actions brought against personal-capacity defendants under § 1983.   NRS 41.031(3) indicates that the State declines to waive its sovereign immunity under the Eleventh Amendment, and the section (3) retention makes no exception for

those plaintiffs who have complied with the naming, filing, and service requirements of section

(2). Because sovereign immunity under the Eleventh Amendment bars § 1983 actions against

states, like Nevada, who do not consent to those suits, *see Quern v. Jordan*, 440 U.S. 332, 338-41

(1979), reading 41.0337 to encompass § 1983 constitutional tort actions thus creates a conflict:

NRS 41.031(1) suggests that the immunity is waived where the requirements of section (2) are

satisfied, but 41.031(3)'s lack of exception suggests that immunity persists. Under the alternative

reading, under which § 1983 personal-capacity actions are not understood to fall within 41.0337's

ambit, no conflict exists.

This interpretation of the statute is consistent with longstanding interpretations of federal

law. States enjoy immunity from suit in their own courts for claims brought pursuant to federal

law, unless the constitutional basis for the federal cause of action is a provision that abrogates the

state's sovereign immunity. *Alden v. Maine*, 527 U.S. 706 (1999). Similarly, in federal court,

states like Nevada that have not consented to suit cannot be sued where the constitutional basis

for the cause of action does not abrogate sovereign immunity. *Mitchell v. City of Henderson*, No.

2:13-cv-01154-APG-CWH, 2015 WL 427835, at *20 & n. 180 (D. Nev. Feb. 2, 2015) ("[NRS

41.031] does not authorize suits against the State of Nevada in federal court because the State has

retained its Eleventh Amendment immunity."); *Carey v. Nev. Gaming Control Bd.*, 279 F.3d 873,

877 (9th Cir. 2002) ("Ninth Circuit cases interpreting § 41.031 have unanimously concluded that

Nevada's retention of "Eleventh Amendment immunity" bars all actions against Nevada in

federal court . . . .").

When evaluating immunity in federal court, however, courts carefully distinguish claims

against the states and state officials sued as such from suits against state officials sued in their

personal capacities. In *Hafer v. Melo*, the United States Supreme Court clarified that personal-

capacity defendants may not defend against § 1983 claims with the state's sovereign immunity.

502 U.S. 21, 25-28 (1991). There, the Court considered the arguments of the Pennsylvania

Auditor General, sued by several discharged state employees, that he was immune from a

personal-capacity damages suit on the basis of Pennsylvania's sovereign immunity. The Court

rejected the argument.  As it explained, "[p]ersonal-capacity suits . . . seek to impose *individual liability* upon a government officer for actions taken under the color of state law."  *Id*. at 25 (emphasis added).  In so reasoning, the Court relied on its decision in *Will*, where it had held that the reference to "every person" in § 1983 excluded not only the states, but also state officials sued in their official capacities.  *Id*. at 25-26.  The *Hafer* Court "eliminate[d] the ambiguity" of *Will* and established a firm distinction between official and personal capacity suits: as the Court stated, "officers sued in their personal capacity come to court as individuals.  A government official in the role of personal-capacity defendant . . . fits comfortably within the [§ 1983] statutory term 'person.'"  *Id*. at 27.  Accordingly, due to the Court's conclusion in *Ex parte Young*, 209 U.S. 123 (1908) that Eleventh Amendment immunity does not bar suits for damages against government officials sued in their individual capacities, the § 1983 claims against Hafer in his individual capacity were properly in federal court.  *Id*. at 30.

Hafer and other Eleventh Amendment cases foreclose the argument that defendants articulate.  Although sovereign immunity unquestionably applies to lawsuits against Nevada in federal court, plaintiff's § 1983 actions against defendants, each of whom is sued for damages in his or her individual capacity (*see* #16 at 2), fall outside of the doctrine's scope.  That the State, as a matter of policy, may choose to insulate NDOC employees and recompense officials for any successful damages actions (*see* #421 at 7-8) does not transform every § 1983 action into a suit against the state, even if the lawsuits require the time of state officials and the expenditure of state resources.  Because plaintiff is not required to invoke Nevada's statutory sovereign immunity waiver to bring suit against state officials sued in their personal capacities in this court, his non-compliance with NRS 41.0331 provides no basis for dismissal of the claims against defendants Williams, Cox, and Skolnik.

**B.  Personal Service**

Next, defendants argue that the Fourteenth Amendment claims should be dismissed on the basis that plaintiff failed to personally serve them.  (#387 at 9-10; #414 at 9-11.)  Under Nevada Rule of Civil Procedure ("NRCP") 4(i), actions are to be dismissed without prejudice when the

plaintiff has not effected service of the summons and complaint upon each defendant within 120 days after filing the complaint.  Although plaintiff allegedly served several NDOC assistants (*see id*.), they contend that service was insufficient because the Nevada Rules require personal service, even when the defendant may have notice of the suit that has been filed against him.  The argument is unavailing.

Following removal, it is federal law, rather than state law, that governs procedural considerations.  *Richards v. Harper*, 864 F.2d 85, 87 (9th Cir. 1988).  Federal courts do not have personal jurisdiction over a defendant unless the defendant has been served properly under Rule 4.  *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc*., 840 F.2d 685, 688 (9th Cir. 1988).  However, Federal Rule 4(m) provides that the court may order the plaintiff to service process within a specified time where he has not effected service upon the defendants within 120 days.  Unlike the state rule, the court may discretionarily enlarge the time for service without a showing of good cause by the plaintiff.  *See* Fed. R. Civ. P. 4(m); *In re Sheehan*, 253 F.3d 507, 513 (9th Cir. 2001); *Mann v. American Airlines*, 324 F.3d 1088, 1090 (9th Cir. 2003).  Moreover, also unlike its state counterpart, "[Federal] Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *Id*. (quoting *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984)).  Accordingly, under its powers as provided in 28 U.S.C. § 1477(a) and 28 U.S.C. § 1448, the court may order new service of process pursuant to Rule 4 following removal to facilitate the exercise of jurisdiction.  *Id*.

The court rejects defendants' service argument for several reasons.  First, it is not undisputed that the individuals who received service on behalf of the defendants were not proper under NRCP 4.  Defendants' arguments are entirely conclusory, without any corroborating affidavits.  Accordingly, the court declines to accept as true defendants' argument that service of the state court complaint was improper.  Second, even if defendants' position is correct, federal law applies to the adequacy of service in this case, so whether service complied with Nevada state law requirements is inapposite.

Third, the procedural history of this case counsels against dismissing for inadequate service. For analysis, the court assumes that defendants are correct that they were not served within the literal confines of Rule 4. As the court described, defendants were dismissed by the District Court's screening order in December 2010. As such, they were relieved of any need to seek dismissal for inadequate service of process under the Federal Rules. Yet had defendants not been dismissed pursuant to 28 U.S.C. § 1915A, they presumably would have moved for dismissal for improper service (among other bases). If the District Court had granted the motion on the service ground, it would have done so without prejudice, such that plaintiff could have refiled his claims and again served defendants—this time, with the benefit of knowing any particular deficiencies. Additionally, the District Court might have, as have several courts in this District, ordered a second attempt at service prior to dismissing the claims—particularly because plaintiff is a *pro se* party. *See, e.g.*, *McCarty v. Roos*, No. 2:11-cv-1538-JCM-RJJ, 2012 WL 2885174, at *2 (D. Nev. July 12, 2012); *Johnson v. Cheryl*, No. 2:11-cv-00291-JCM-CWH, 2013 WL 129383, at *4 (D. Nev. Jan. 9, 2013). In short, but for the screening dismissal, plaintiff would have been provided several opportunities to rectify any service deficiencies.

Therefore, in light of the complicated procedural history, this court believes it would manifestly unjust to dismiss defendants for improper service that occurred years ago, as the earlier proceedings effectively deprived plaintiff an opportunity to cure any errors. The court's conclusion is further bolstered by the plaintiff's ready compliance with Rule 4 following the District Court's order reinstating the claims against these defendants. Therefore, to the extent defendants are correct in arguing that service was insufficient, the court recommends retroactive extension of the period for service, from its expiration date in 2010 until the dates upon which defendants were served following the District Court's order (#315).

**C.    State Court Dismissal**

Defendants contend that plaintiff voluntarily dismissed this case prior to removal to federal court via Rule 41(a) of the Nevada Rules of Civil Procedure. Because dismissal under Nevada Rule 41(a) is automatic, they argue that dismissal occurred prior to their removal to

1  federal court. In so arguing, they rely on the so-called "prison mailbox rule," under which

2  plaintiff's dismissal was purportedly effective on March 28, 2010, at the moment he delivered his

3  dismissal notice mailing to prison officials. The court observes that the parties have litigated and

4  relitigated this issue, but in the interest of providing finality, the court engages the issue one last

5  time and concludes that the case is properly before the court.

6        As defendants correctly argue, voluntary dismissal is automatic under Nevada Rule 41(a).

7  As the Nevada Supreme Court has explained, "[s]o long as plaintiff has not been served with his

8  adversary's answer or motion for summary judgment he need do no more than *file a notice of*

9  *dismissal with the Clerk.*" *Federal Savings & Loan Insurance Corp. v. Moss*, 88 Nev. 256, 259

10  (1972) (emphasis added). By the Court's own words, then, dismissal is effective upon filing. In

11  this case, plaintiff's notice was filed by the clerk on April 1, 2010, two days following the March

12  30 docketing of the removal notice.

13        The prison mailbox rule does not alter this conclusion. Within the Ninth Circuit, the

14  "prison mailbox rule" renders a *pro se* prisoner's papers filed as of the date he places them into

15  the hands of prison officials. *See Douglas v. Noelle*, 567 F.3d 1103, 1106-07 (9th Cir. 2011).

16  However, the mailbox rule is a procedural nuance applicable to papers in federal court. As such,

17  defendants' reliance on *Douglas* for the proposition that plaintiff's state court dismissal occurred

18  on March 28, 2010 is unavailing. The voluntary dismissal notice was filed in state court, rather

19  than federal court.[3] Therefore, the question is not upon what date this court would have deemed

20  his dismissal filed, but instead the date upon which Nevada's Seventh Judicial District Court—

21

22

23  _____

24  [3] Similarly, defendants' reliance on *Schiro v. Clark*, No. 3:10-cv-00203-RCJ-VPC, 2011 WL
    7116315, at *1 n.2 (D. Nev. Dec. 8, 2011) is unpersuasive. There, as defendants discuss in their

25  reply brief (# 421 at 1-2), this court applied the prison mailbox rule to the filing of an inmate's §
    1983 complaint that was originally filed in state court. Yet the court specifically considered upon

26  what date the complaint would be deemed filed in this court following his proper refiling in
    federal court. *Schiro* does not support the notion that federal courts rely on the prison mailbox

27  rule to independently determine the date upon which documents are filed in state courts. As the
    court explains above, the relevant inquiry in this case is the date upon which Nevada courts would

28  consider plaintiff's Rule 41(a) dismissal notice filed, rather than the date that this court might
    have deemed it filed had the notice been filed here.

1    where the case was still pending until removal occurred on March 30—would consider the
2    dismissal filed.

3        This court has located no authority to suggest that, under Nevada law, plaintiff's
4    dismissal was effective prior to the April 1, 2010 docketing by the Seventh Judicial District
5    Court. Nevada state courts do not apply the prison mailbox rule as liberally as do their federal
6    counterparts. In *Kellogg v. Journal Communications*, 108 Nev. 474, 477 (1992), the Nevada
7    Supreme Court first adopted the prison mailbox rule. There, the Court held that *notices of appeal*
8    in civil and criminal cases submitted by *pro se* inmates are filed as of the date they place the
9    notices in the hands of prison officials.

10       On subsequent occasions, the Court has declined to extend the rule, and its justification
11   for doing so is instructive. In *Milton v. Nevada Department of Prisons*, 119 Nev. 163 (2003), the
12   Court declined to extend *Kellogg* "to the filing of pleadings commencing any civil action." *Id.* at
13   165. The Court reasoned that it had recently refused, in *Gonzales v. Nevada*, 118 Nev. 590
14   (2002), to extend the rule to deadlines for filing post-conviction habeas petitions on the basis that
15   the "timeliness problems" for filing appeals notices, which require filing within a brief thirty day
16   window, are not present with habeas filings, which "are subject to deadlines of an entire year and
17   possibly longer . . . ." *Id.* Similarly, plaintiffs did not face such pressing deadlines for filing
18   complaints, and the Court declined "to create a blanket 'mailbox' rule for the filing of complaints
19   . . . ." *Id.*

20       As with *Milton* and *Gonzales*, there are no timeliness concerns with plaintiff's voluntary
21   dismissal in this case. The plain language of NRCP 41(a) allowed him to voluntarily dismiss at
22   "any time," which contrasts with the fleeting time considerations that motivated the *Kellogg*
23   Court. This court recognizes that plaintiff's ability to dismiss without defendants' involvement
24   under NRCP 41(a) features, in a way, a small time window: defendants may answer or file a
25   summary judgment motion within the time period required by the Nevada Rules and thereby
26   extinguish plaintiff's ability to dismiss under Rule 41 without their stipulation. *See Gallen v.*
27   *Eighth Judicial District Court*, 112 Nev. 209, 212 (1996) ("If the defendant wishes to protect

28

herself from the plaintiff's right to dismiss her voluntarily, she may file an answer or a formal motion for summary judgment."). However, that argument is one without meaning, for it does not concern plaintiff's ability to secure judicial review of his claims—the primary, and perhaps only, end the Court sought to protect in *Kellogg*.

At bottom, no authority that suggests that the Nevada Supreme Court would extend the prison mailbox rule to the filing of a Rule 41(a) notices. *Moss* therefore confirms that the dismissal occurred "automatically" upon the state court clerk's April 1, 2010 filing. However, by that date, the action had been removed to federal court; the removal statute, 28 U.S.C. § 1446, provides that removal becomes effective upon the state court's docketing of the removal petition. Because the action was removed when the Seventh Judicial District Court docketed the removal petition on March 30, 2010, and plaintiff did not voluntarily dismiss in state court until April 1, the case is properly before this court and defendants lack a meritorious basis for dismissal on the basis of these events.[4]

**D.    Pleading Sufficiency**

Defendants contend that the complaint is insufficiently pled, which the court construes as a motion to dismiss under Rule 12(b)(6). Relying on *Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990 (9th Cir. 2014), they argue that the pleading lacks factual allegations that, if proven, would have put them on notice of underlying constitutional violations by their subordinates. Accordingly, they argue that complaint does not establish that it is more likely than not that they acted in a culpable way. (*See* #387 at 17-18; #414 at 18-20.) State differently, they suggest the complaint's allegations against them may be read as consistent with liability and also

---

[4] Defendants also argue that equitable principles favor dismissal because plaintiff has offered conflicting explanations for his actions related to removal. (#387 at 10-12, 16-17; #414 at 10-12, 16-17; #421 at 10-11.) Although the court agrees that plaintiff's explanations border on incredulity, it finds the argument unpersuasive. Both parties have litigated vigorously and seized on procedural circumstances to their advantages. For that reason, it would be inappropriate to apply the principles of equity with a heavy hand against plaintiff when defendants have litigated with equal zeal. Moreover, defendants cite no authority for the proposition that a claim may dismissed solely upon equitable grounds.

1    non-liability.  Under *Eclectic Properties*, the pleading is thus insufficient because it fails to make

2    more plausible the liability explanation.  *See* 751 F.3d at 996-97.

3          In *Eclectic Properties*, the Ninth Circuit synthesized its recent decisions pertaining to the

4    pleading standard under the Federal Rules of Civil Procedure.  Rule 8(a) requires a "short and

5    plain statement" that demonstrates the plaintiff's entitlement to relief, and it must contain

6    sufficient factual allegations to "'raise the right to relief above a speculative level.'"  *Id.* at 995

7    (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Therefore, the plaintiff must

8    "include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'"

9    *Id.* (quoting *Twombly*, 500 U.S. at 557).  When "'there are two alternative explanations, . . . both

10   of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6).

11   Plaintiff's complaint may be dismissed *only* when defendant's plausible alternative explanation is

12   so convincing that plaintiff's explanation is implausible.'"  *Id.* (quoting *Starr v. Baca*, 652 F.3d

13   1202, 1216 (9th Cir. 2011)).  But when the court faces two possible explanations, "only one of

14   which can be true and only one of which results in liability," plaintiffs must offer more than

15   allegations "merely consistent with their favored explanation" when the allegations are also

16   consistent with defendants' alternative.  *Id.* (quoting *In re Century Aluminum Co. Secs. Litig.*,

17   729 F.3d 1104, 1108 (9th Cir. 2013).  "'Something more is needed, such as facts tending to

18   exclude the possibility that the alternative explanation is true . . . .'"  *Id.* (quoting *Century

19   Aluminum*, 729 F.3d at 1108).

20         Defendants' argument is unpersuasive.  First, despite reliance on *Eclectic Properties*,

21   defendants fail to explain the purported alternative explanations, and in so doing, demonstrate that

22   the complaint's allegations are consistent with each.  That is, it is not apparent from their motions

23   what explanation decidedly points to a lack of culpability and how plaintiff's allegations are

24   equally consistent with that theory as his own.  It is not the court's role to surmise possible

25   explanations for defendants' actions and evaluate them under the cited legal standard.

26   Accordingly, the court rejects defendants' *Eclectic Properties* argument as entirely conclusory.

27

28

Second, it is evident that the complaint is sufficiently pled. Plaintiff does far more than merely allege theories consistent with defendants' liability. In fact, against each official, he avers that they affirmatively reviewed and rejected his grievances (or, in Skolnik's case, a personal letter) that ultimately sought their exercise of authority to rectify an alleged due process violation. (*See* #16 at 22-23.) The District Court's June 4, 2014 order, in contrast to defendants' misunderstanding (*see* #387 at 17; #414 at 18), explains that the revived supervisory liability claims are predicated on the allegations—which the court must accept as true at this stage—that Williams, Cox, and Skolnik were personally involved in ratifying the alleged denial of plaintiff's desired witness. (#315 at 6) ("Plaintiff detailed each Defendant's role *as a direct participant* in or a supervisor of the disciplinary process . . . .") (emphasis added). As this court and the District Court identified, these allegations are sufficient to establish liability for violations of plaintiff's due process rights. (#225 at 5; #315 at 7.) As such, there is no basis for dismissing this case against Williams, Cox, and Skolnik on the grounds of pleading insufficiency.[5]

**E.     Skolnik's Qualified Immunity**

Lastly, Skolnik, but neither Williams nor Cox, moves dismissal on the ground of qualified immunity. (#414 at 20-23.) He argues that the law, as of 2007, was that defendants must be personally involved in the constitutional violations underlying a § 1983 claim. Because the Ninth Circuit did not clarify the scope of supervisory liability until 2011 in *Starr v. Baca*, he contends that the law was not clearly established and qualified immunity defeats the claim against him.

---

[5] The court notes that defendants also bury within this section of their briefs, and they discuss more fully in reply, the argument that the Court failed to review the three-part *Chevron* test, *see Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971), for retroactive application of *Starr*. For reasons stated in Part III.E of this opinion, the court concludes that *Chevron* analysis was and is not demanded by this case. The District Court did not retroactively apply *Starr*. That case simply clarified that the claims against defendants remained cognizable, notwithstanding the Supreme Court's alteration of one area of supervisory liability in its *Iqbal* decision. The applicable law at the time that they acted in 2007, was identical to the law as clarified by *Starr*. Only between 2009 and 2011, due to the uncertainty post-*Iqbal*, did the scope of supervisory liability seemingly change. Yet when defendants acted in 2007, they acted with the benefit of clearly established law, and *Starr* simply affirms that the standards existing in 2007 endure. Consequently, this is not an occasion upon which defendants might be held liable for a legal rule applied retroactively. *Chevron* is, therefore, inapposite.

1    Prison officials may affirmatively defend § 1983 claims brought against them in their

2    individual capacities on the ground of qualified immunity. *Spoklie v. Montana*, 411 F.3d 1051,

3    1060 (9th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).   When conducting the

4    qualified immunity analysis, courts "ask (1) whether the official violated a constitutional right

5    and (2) whether the constitutional right was clearly established."  *C.B. v. City of Sonora*, 769 F.3d

6    1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)).   The

7    court may analyze the elements of the test in whatever order is appropriate under the

8    circumstances of the case.   *Pearson*, 555 U.S. at 240-42.  Whether the right is established is an

9    objective inquiry, and it turns on whether a reasonable official in the defendant's position should

10   have known at the time that his conduct was constitutionally infirm.  *Anderson v. Creighton*, 483

11   U.S. 635, 639-40, (1987); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012).

12   Skolnik's argument for qualified immunity is unavailing.   First, at this stage, plaintiff's

13   allegations sufficiently allege a due process claim.   The court thus moves to the second inquiry,

14   where it concludes that the law was clearly established at the time Skolnik allegedly acted.  As of

15   2007, it was clearly established law within the Ninth Circuit that "[a] supervisor may be liable

16   [under § 1983] if there exists . . . a sufficient causal connection between the supervisor's wrongful

17   conduct and the constitutional violation."  *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).   It

18   was not until 2009—two years following the alleged events in this case—that the Supreme

19   Court's decision in *Iqbal* cast doubt on the extent of supervisory liability under § 1983.

20   The District Court screened the complaint and dismissed the supervisory claim against

21   Skolnik in 2010, relying on *Iqbal* and without the benefit of the Ninth Circuit's clarification in

22   *Starr*.  Then, following the 2011 *Starr* decision, this court recommended, and the District Court

23   concurred, that *Starr*'s clarification permitted the supervisory claims to move forward.  Despite

24   an intervening period of uncertainty, *Starr* confirms that *Iqbal*'s scope was limited and did not

25   displace supervisory liability in other areas, which was the basis for the District Court's

26

27

28

15

reinstatement of the claims.[6]   When he acted, Skolnik did so when the scope of supervisory liability was clearly established law: his personal actions in reviewing the grievances could lead to liability, as long as they consisted of more than simple knowledge and failure to correct. Because in this particular occasion, under plaintiff's allegations, Skolnik had the authority and responsibility to intervene, his participation was sufficiently direct and fell within the clearly established law at the time.

Further, denial of an inmate's right to witness testimony during a disciplinary proceeding was also clearly established law as of 2007.  *See Wolff v. McDonnell*, 418 U.S. 538, 569 (1974). Therefore, to the extent it was necessary to "first establish" (*see* #414 at 23) that Skolnik's subordinates had violated plaintiff's rights through the denial of his desired witness, Skolnik was allegedly on notice, by the fact of plaintiff's letter, of allegations that amounted to plain violations.  Skolnik would have been plainly incompetent not to recognize a violation thereof, and also to believe that his ratification of these actions would be constitutionally firm.  He allegedly ratified the decision.  If he failed to ascertain and investigate—that is, "first establish" that violations occurred, in his own words—the factual circumstances underpinning the letter before letting stand the disciplinary sanction, the fault was only his own.  Certainly, his failure to look into the issue is no basis for granting him qualified immunity.

At all pertinent times, plaintiff's entitlement to a witness, and also Skolnik's liability for the due process violations for his subordinates through his failure to intervene with the authority he wielded, was clearly established law.  As such, qualified immunity is not available to Skolnik. The court recommends that the defense be rejected as a basis for dismissing the claim.

---

[6] The court notes that description of these claims as "supervisory" is somewhat a misnomer.  As Part I explains, plaintiff's allegations are that Skolnik was a direct participant in the due process violation, even if he held a supervisory role over Mustafaa, Williams, and Cox.   Stated differently, this is not a case where Skolnik was a supervisor with mere passing knowledge of the deeds of his subordinates; instead, he is alleged to have actively reviewed and affirmed what they had done, as required by applicable NDOC policy and rules.  Consequently, the effect of *Starr* upon this case is questionable; the precise theory that plaintiff offers is meaningfully different than the kind of supervisory liability considered in *Starr* and *Iqbal*.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

#### IV.    CONCLUSION

For the reasons articulated above, defendants' motions to dismiss lack merit.  Because the court recommends that the motions be denied, it also recommends that the motions to stay discovery be denied so that this case may move toward timely resolution.

The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice,  the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

#### V.    RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the motions to dismiss by defendants Williams and Cox (#387) and Skolnik (#414) be **DENIED**;

**IT IS FURTHER RECOMMENDED** that the court retroactively enlarge the time for service of defendants Williams, Cox, and Skolnik from the March 2010 until the dates of service indicated at dockets 376 and 411;

**IT IS FURTHER RECOMMENDED** that motions to stay discovery by defendants Williams and Cox (#387) and Skolnik (#415) be **DENIED**.

**DATED**: April 8, 2015.

_____
**UNITED STATES MAGISTRATE JUDGE**

17