1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

CHRISTOPHER A. JONES,

               Plaintiff,

v.

HOWARD SKOLNIK, *et al.*,

               Defendants.

3:10-cv-00162-LRH-VPC

**SECOND AMENDED[1] REPORT AND
RECOMMENDATION
OF U.S. MAGISTRATE JUDGE**

      This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for summary judgment (ECF No. 598), defendants' motion for summary judgment (ECF No. 608), plaintiff's motion for order excluding evidence or, in the alternative, strike exhibits (ECF No. 617), and plaintiff's motion to strike (ECF No. 628). For the reasons stated below, the court orders that plaintiff's motion for order excluding evidence (ECF No. 617) be denied, and that plaintiff's motion to strike (ECF No. 628) be granted. Additionally, the court recommends that plaintiff's motion for summary judgment (ECF No. 598) be denied, and that defendants' motion for summary judgment (ECF No. 608) be granted in part and denied in part.

## I.     BACKGROUND AND PROCEDURAL HISTORY

      Christopher Jones ("plaintiff"), is an inmate in the custody of the Nevada Department of Corrections ("NDOC"), and he is currently housed at Northern Nevada Detention Center ("NNCC"). Pursuant to 42 U.S.C. § 1983, plaintiff brings this civil rights action for events

---

[1] Plaintiff filed a motion for clarification (ECF No. 640) to clarify whether the court granted qualified immunity to defendant Mustafaa in its Amended Report and Recommendation (ECF No. 639). The court grants plaintiff's motion and clarifies that it intended to grant qualified immunity to defendants Williams and Cox, and not to Mustafaa, on page 18 of its Amended Report and Recommendation (ECF No. 639 at 18). This Second Amended Report and Recommendation corrects this mistake.

1    which occurred while plaintiff was incarcerated at Southern Desert Correctional Center

2    ("SDCC"). (ECF No. 16.)  He sues SDCC Correctional Sergeant Yaqub Mustafaa ("Mustafaa"),

3    SDCC Warden Brian Williams ("Williams"), NDOC Director James Cox ("Cox"), SDCC

4    Correctional Sergeant Jeremiah Schultz ("Schultz"), and SDCC Correctional Officer Taerik

5    Berry ("Berry").  (*See* ECF No. 16; ECF No. 608 at 5.)  Because the procedural history of this

6    case spans seven years and includes more than six-hundred docket entries, the court briefly

7    summarizes only the relevant portions of the docket.  Pertinent factual disputes will be discussed

8    as necessary during the court's analysis of the motions for summary judgment.

9        Plaintiff's First Amended Complaint ("FAC") is the operative complaint.  (ECF No. 16.)

10   The FAC asserts three claims:[2] (1) Fourteenth Amendment due process claim against Mustafaa,

11   Williams, and Cox (count I); (2) First Amendment retaliation claim against Schultz (count III)

12   and (3) Fourteenth Amendment due process claim against Berry (count IV).  (*Id.*)

13       According to the FAC, the events giving rise to plaintiff's claims are as follows.  (*Id.*)  On

14   June 1, 2007, while incarcerated at the Southern Desert Correctional Center, defendant Schultz

15   approached plaintiff's cell.  Defendant Schultz ordered plaintiff to place his bunk closer to the

16   cell door, and to move his television stand near the wall opposite the cell door.  Plaintiff contends

17   that there is no rule regarding the arrangement of cells at SDCC, and he voiced his belief that

18   there was no such rule to defendant Schultz.

19       Defendant Schultz then asked to see plaintiff's identification.  Plaintiff stepped toward

20   Schultz to hand him his identification and Schultz stated, "Don't be walking up on me like that!"

21   Plaintiff was ordered out of the cell, handcuffed, and taken to an activity room.  Defendant

22   Schultz and another officer then lectured plaintiff about making an aggressive move toward

23   prison staff.  Upon returning to his cell, plaintiff discovered that officers, allegedly under the

24   direction of defendant Schultz, had "dumped out all my boxes of legal work onto the floor and

25   trampled it under foot as well as other items of personal property and clothes."  Plaintiff opines

26

27   _____

28   [2] The court omits claims presented in the FAC that were subsequently dismissed by order and stipulation.  (*See* ECF
     Nos. 98, 118, 119, 131, & 140.)

1    that, based on timing, Schultz acted in retaliation for plaintiff having filed a grievance against a

2    correctional officer on May 28, 2007.

3        Plaintiff asked Berry the names of the officers who trampled his personal property.  In

4    response, Berry directed plaintiff to step out of the cell.  Plaintiff stepped out of the cell and

5    placed his hands on the wall.  Plaintiff alleges that although he was not in an aggressive or

6    resistant posture, several officers slammed him to the floor and exercised excessive force

7    against him.  Days later, Berry charged plaintiff with several disciplinary violations including

8    assault, disobedience of an order, threats, battery, and abusive language.  Plaintiff claims that

9    these charges were fraudulently brought as a cover-up for the use of excessive force.

10       Plaintiff's disciplinary hearing on the charges was held on July 30, 2007.  Mustafaa

11   served as the hearing officer.  Plaintiff requested to have his cell mate at the time of the

12   incident, Robert Walker ("Walker"), testify at the disciplinary hearing.  However, Mustafaa

13   denied plaintiff's request, finding that inmate Walker was unavailable to testify at the hearing.

14   Plaintiff was found guilty at the disciplinary hearing and was given eighteen months of

15   disciplinary segregation at Ely State Prison and a 365-day loss of good-time credits.  Plaintiff

16   contends that Walker's testimony should have been made available via telephone, as is

17   contemplated in Administrative Regulation 707, and that Mustafaa's failure to do so violated

18   his right to procedural due process of law.

19       On September 19, 2017, after years of litigation, plaintiff filed his motion for summary

20   judgment.  (ECF No. 598.)  Defendant opposed (ECF No. 620) and plaintiff replied (ECF No.

21   626).  On October 18, 2017, defendants moved for summary judgment, (ECF No. 608), which

22   plaintiff opposed (ECF No. 627), and to which defendants replied (ECF No. 629).  Finally,

23   plaintiff moved to exclude evidence or, in the alternative, strike exhibits ((ECF No. 617)

24   attached to defendants' motion for summary judgment, and moved to strike (ECF No. 628)

25   portions of a declaration attached to defendants' motion for summary judgment and defendants'

26   response to plaintiff's motion for summary judgment.  Defendants filed oppositions to both

27   evidentiary motions (ECF Nos. 621 & 632) and plaintiff replied (ECF Nos.  622 & 634).  This

28   recommended disposition follows.

3

## II.    LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  "[T]he substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" only where a reasonable jury could find for the nonmoving party.  *Id.*  Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996).  At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth.  *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps.  A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts.  *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party.  *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial."  *In re Oracle*

1    *Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).  "This burden is not a

2    light one," and requires the nonmoving party to "show more than the mere existence of a

3    scintilla of evidence. . . .  In fact, the non-moving party must come forth with evidence from

4    which a jury could reasonably render a verdict in the non-moving party's favor."  *Id.* (citations

5    omitted).  The nonmoving party may defeat the summary judgment motion only by setting forth

6    specific facts that illustrate a genuine dispute requiring a factfinder's resolution.  *Liberty Lobby*,

7    477 U.S. at 248; *Celotex*, 477 U.S. at 324.  Although the nonmoving party need not produce

8    authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and

9    "metaphysical doubt as to the material facts" will not defeat a properly-supported and

10   meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

11   U.S. 574, 586–87 (1986).

12       For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant

13   in motions and pleadings are admissible to the extent that the contents are based on personal

14   knowledge and set forth facts that would be admissible into evidence and the litigant attested

15   under penalty of perjury that they were true and correct.  *Jones v. Blanas*, 393 F.3d 918, 923 (9th

16   Cir. 2004).

17                          **III.    DISCUSSION**

18       Before considering the parties' respective motions for summary judgment on the merits,

19   the court first turns to plaintiff's evidentiary motions.  (ECF Nos. 617 & 628.)

20   **A.    Plaintiff's Motion for Order Excluding Evidence or, in the Alternative, Strike**

21   **Exhibits**

22       Plaintiff seeks to exclude two exhibits attached to defendants' motion for summary

23   judgment: (1) Exhibit 3, SDCC Officer Ahching's Notice of Charges filed against plaintiff for

24   his altercation with prison officers on June 1, 2007; and (2) Exhibit 5, a Notice of Charges

25   submitted by SDCC Officer Thackwell concerning the same altercation.  (ECF No. 617.)  In the

26   alternative, plaintiff moves to strike these exhibits.  (*Id.*)  Plaintiff offers three separate legal

27   arguments to support his motion.  (*Id.*)

28

1

### 1. Federal Rules of Civil Procedure Rule 26

2      First, plaintiff argues that exclusion is appropriate because defendants failed to disclose

3   their intent to use these exhibits, as required by Federal Rules of Civil Procedure rule 26(a)(1)[3]

4   and rule 26(e)(1)(A).   FED. R. CIV. P. 26(a), (e); (ECF No. 617 at 1.)   In relevant part, Rule

5   26(a)(1)(A) requires parties to provide each other with "a copy—or a description by category

6   and location—of all documents, electronically stored information, and tangible things that the

7   disclosing party has in its possession custody, or control and may use to support its claims or

8   defenses …."   FED. R. CIV. P. 26(a)(1)(A)(ii).   Rule 26(e) imposes upon a disclosing party a

9   continuing duty to supplement or correct a disclosure under Rule 26(a) when that party "learns

10  that in some material respect the disclosure or response is incomplete or incorrect, and if the

11  additional or corrective information *has not otherwise been made known to the other party*

12  *during the discovery process or in writing* …."   FED. R. CIV. P. 26(e)(1)(A) (emphasis added).

13  Finally, under Rule 37(c)(1), if "a party fails to provide information … as required by Rule 26(a)

14  or (e), the party is not allowed to use that information … unless the failure was substantially

15  justified or harmless."   FED. R. CIV. P. 37(c)(1).

16     The court is unable to find that defendants violated Rule 26.   Plaintiff's motion to

17  exclude Exhibits 3 and 5 is based primarily on his allegation that defendants failed to disclose

18  these exhibits in their answers to plaintiff's interrogatories in December 2013 and in January

19  2014.  (ECF No. 617 at 3.)   However, defendants attach to their opposition the initial disclosures

20  of defendant Schultz, which shows that defendants provided plaintiff with copies of Exhibit 3

21  and Exhibit 5 in February 2014.  (ECF No. 621 Exh. 1 at 5-8.)   The court will not exclude these

22  exhibits because the copies defendants provided to plaintiff satisfy the duty to disclose evidence

23  under 26(a), as well as the duty to supplement incomplete disclosures under 26(e).   Plaintiff

24  appears to concede that the Schultz initial disclosures preclude his Rule 26 challenge, and, in any

25  event, correctly notes that neither Rule 26(a) nor (e) control here as he brings this action *pro se*

26

27

28

---

[3] All references to a particular rule refer to the Federal Rules of Civil Procedure, unless otherwise noted.

6

1    while in the custody of the State of Nevada. FED. R. CIV. P. 26(a)(1)(B)(iv) (initial disclosure

2    requirements not applicable in *pro se* prisoner cases); (*see* ECF No. 622 at 6).

3                **2.  The Court's Inherent Power**

4        Second, plaintiff moves to strike Exhibits 3 and 5 under the courts inherent power to

5    control its docket because these exhibits are "contrary to a well-established discovery rule."

6    (ECF No. 615 at 8.)  The court may strike improper filings, other than pleadings, under its

7    "inherent power over the administration of its business." *Spurlock v. F.B.I.*, 69 F.3d 1010, 1016

8    (9th Cir. 1995); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (inherent powers are

9    tools for "control necessarily vested in courts to manage their own affairs so as to achieve the

10    orderly and expeditious disposition of cases").  Motions to strike under the inherent power are

11    granted at the courts discretion in order to address abuses of the judicial process. *Chambers*, 501

12    U.S. at 44-45 (noting that "inherent powers must be exercised with restraint and discretion").

13        Here, plaintiff appears to argue that defendants abused the judicial process by violating

14    Rule 26(e) and Rule 33.  (ECF No. 615 at 8.)  As discussed *infra*, the court finds that defendants

15    have not violated Rule 26(e).  Furthermore, defendants appear to have "fully" answered

16    plaintiff's interrogatories pursuant to Rule 33 by advising plaintiff of their intent to "use the

17    documents previously provided in defendant Schultz's [Rule 26] initial disclosures," because

18    Schultz's disclosures include Exhibits 3 and 5. (*See* ECF No. 617 Exh. 1 at 8.)  Plaintiff provides

19    no argument to the contrary that addresses the effect of the Schultz initial disclosures on his

20    motion to strike under the court's inherent authority.  (ECF No. 617 at 8.)  Without more,

21    plaintiff fails to demonstrate that defendants have abused the judicial process to warrant the

22    court's exercise of its inherent power to strike defendants' exhibits.

23                **3.  Federal Rules of Civil Procedure rule 56(c)(2) objections**

24        Finally, plaintiff contends that Exhibits 3 and 5 are inadmissible into evidence because

25    they are irrelevant, prejudicial, and constitute inadmissible hearsay.  (ECF No. 617 at 5; ECF

26    No. 622 at 5-7); *see* FED. R. CIV. P. 26(c)(2).  As an initial matter, the court declines to

27    countenance plaintiff's argument regarding hearsay as it is raised for the first time in plaintiff's

28    reply brief and deprives defendants with an adequate opportunity to rebut. *Cent. Delta Water*

1  *Agency v. United States*, 306 F.3d 938, 952 n.10 (9th Cir. 2002) (noting that courts "ordinarily

2  decline to consider arguments raised for the first time in a reply brief") (quoting *United States v.*

3  *Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (per curiam).  Given the opportunity, defendants may

4  have pointed out that Officers Ahching and Thackwell's contemporaneous reports are admissible

5  under Federal Rules of Evidence rule 803(8).  FED. R. EVID. 8(A)(ii), (B); *e.g.*, *Kubik v. Brown*,

6  979 F. Supp. 539 (W.D. Mich. 1997).

7       Plaintiff's chief argument is that Exhibit 3 and 5 are irrelevant and prejudicial because

8  the charges listed therein were ultimately dismissed and thus "rendered nonexistent …."  (ECF

9  No. 67.)   The court disagrees.  Despite plaintiff's sweeping language, he provides no authority

10  to support the proposition that a dismissal of prison disciplinary charges prevents the admission

11  of supporting contemporaneous reports into evidence in subsequent cases.   Furthermore,

12  plaintiff's concerns that the charges listed in the exhibits may prejudice a jury do not persuade

13  the court that it will be unable to properly consider this evidence at the motion for summary

14  judgment stage. *Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 428 (7th Cir. 2000) ("while it is

15  not unheard of to exclude evidence under [Federal Rules of Evidence] Rule 403 at the summary

16  judgment stage, …normally the balancing process contemplated by that rule is best undertaken

17  at the trial itself."); *see Crye Precision LLC v. Bennettsville Printing*, 2017 U.S. Dist. LEXIS

18  17098, *2 (E.D.N.Y. Feb. 7, 2017) (collecting cases).

19       Plaintiff's only remaining contention is that Exhibits 3 and 5 should be stricken or

20  excluded as irrelevant.  The court declines to engage in a relevance inquiry here, and will instead

21  examine the relevance of Exhibits 3 and 5 when considering defendants' motion for summary

22  judgment on the merits.  ADVISORY COMMITTEE NOTE TO FED. R. CIV. P. 56 (when raising an

23  objection under Rule 56(c)(2), a party need not "make a separate motion to strike"); *see*

24  *Richardson v. CBS Studios Inc.*, No. CV 12-7925 ABC (SHX), 2013 WL 12120265, at *1 n.1

25  (C.D. Cal. Sept. 25, 2013) (denying defendants' motion to strike in part because Rule 56(c)(2)

26  objections need not be raised in separate motion).

27       For the foregoing reasons, plaintiff's motion for order excluding the evidence or, in the

28  alternative, strike exhibits (ECF No. 617) is denied.

1  **B.      Plaintiff's Motion to Strike**

2          Plaintiff also moves to strike portions of Mustafaa's declaration, which defendants attach

3  as an exhibit to both their motion for summary judgment (ECF No. 608 Exh. 24) and opposition

4  to plaintiff's motion for summary judgment (ECF No.620 Exh. 9).  (ECF No. 628.)  Plaintiff

5  moves to strike paragraph seven of the declaration on the basis that, in violation of Rule 56(e), it

6  contains statements not based on personal knowledge and unsupported by the record or attached

7  documentation.  (*Id.* at 1.)

8          **1.  Legal Standard**

9          Two separate sources of authority empower this court to strike a motion.  First, pursuant

10  to Federal Rules of Civil Procedure, the "court may strike from a pleading . . . any redundant,

11  immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  As its terms suggest, Rule

12  12(f) only empowers the court to strike pleadings.  It has no applicability here.

13          Second, the court may strike an improper filing under its "inherent power over the

14  administration of its business."  *Spurlock v. F.B.I.*, 69 F.3d 1010, 1016 (9th Cir. 1995); *see also*

15  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (inherent powers are tools for "control

16  necessarily vested in courts to manage their own affairs so as to achieve the orderly and

17  expeditious disposition of cases").  Motions to strike under the inherent power are granted at the

18  courts discretion to address abuses of the judicial process.  *Chambers*, 501 U.S. at 44-45 (noting

19  that "inherent powers must be exercised with restraint and discretion").

20          Plaintiff's motion to strike is based solely on his position that the challenged portion of

21  Mustafaa's declaration abuses the judicial process by violating Rule 56(c)(4).  Rule 56(c)(4)

22  provides in relevant part that declarations attached to summary judgment motions "must be made

23  on personal knowledge [and] set out facts that would be admissible in evidence …."  FED. R. CIV.

24  P. 56(c)(4).    Unless uncontested, courts will not consider declarations attached to summary

25  judgment motions that fail to satisfy the Rule 56(e) prerequisites.  *Id.*; *Hall v. CIA*, 538 F. Supp.

26  2d 64 (2008) (striking portion of plaintiff's declaration under inherent power for violation of rule

27  56(e)).

28

### 2.  Analysis

Plaintiff argues that paragraph seven of Mustafaa's declaration contains factual statements that are not based on personal knowledge.  Mustafaa's declaration explains his decision to deny plaintiff's request to have his former cell mate, Robert Walker, testify as a witness in plaintiff's disciplinary hearing.  (*See* ECF No. 628 Exh. 1.)  Paragraph seven reads:

> I also denied [plaintiff's] witness request because I determined it was unnecessary. I believed Inmate Walker's testimony to be unnecessary because I had stipulated or taken into consideration that Inmate Walker would testify that there was a verbal disagreement between plaintiff and the officers involved in the incident(s) on June 1, 2007; that he was physically present during a portion of the incident but not all of the incident and, therefore, did not observe everything that happened, including the assault upon Senior Correctional Officer Berry; and that during the incident, he may have overheard dialogue between plaintiff and correctional officers.

(*Id.* at 1-2.)  Defendants maintain that these statements are not introduced to establish the events Walker witnessed, but to establish Mustafaa's beliefs when denying plaintiff's request to have his cellmate called as a witness at his disciplinary hearing.  (ECF No. 632 at 2-3.)  Plaintiff replies that Mustafaa's assertions appear to be introduced for their truth, and that, regardless, state of mind is not at issue.  (ECF No. 634.)

The court agrees with plaintiff.  The parties do not dispute that Mustafaa lacks personal knowledge of the extent of Walker's involvement in the June 1, 2007 incident.  (ECF No. 632 at 2-3; ECF No. 634 at 1-2.)  Defendants peripherally argue that Mustafaa based his assertions on "staff reports regarding the June 1, 2007 confrontations," but plaintiff's second-hand account of these reports would constitute hearsay to the extent they are introduced to establish their truth. *See* Fed. R. Civ. P. 56(c)(2).  Even if the court were willing to assess whether a hearsay exception applies, it would be unable to do so because defendants fail to identify which staff reports Mustafaa reviewed in order to support the assertions in question.  *See Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) (holding that a *particular* piece of inadmissible evidence was properly considered under Rule 56 where it was clear that the plaintiff had sufficient personal knowledge to introduce its contents through testimony).

1    Defendants' argument that Mustafaa's assertions demonstrate his state of mind are also

2    unavailing.  Defendants contend that Mustafaa's assertions are relevant to his reasons for denying

3    plaintiff's witness request and "his state of mind as it relates to the qualified immunity analysis."

4    (ECF No.632.)    However, Mustafaa's subjective reasoning for finding Walker's testimony

5    unnecessary is not an issue the court considers in deciding whether Mustafaa is entitled to

6    qualified immunity.  Rather, qualified immunity analysis calls for an objective inquiry into

7    whether Mustafaa's decision to exclude Walker as a witness is "objectively reasonable in light of

8    facts and circumstances confronting [him], without regard to [his] underlying intent or

9    motivation."  *Graham v. Connor*, 490 U.S. 386, 397 (1989).  To hold that Mustafaa's internal

10    beliefs constitute a fact or circumstance would require the court to impermissibly assume the

11    conclusion that his beliefs are reasonable.  Nor is Mustafaa's state of mind at issue in the

12    procedural due process claim brought against him.  *Neal v. Shimoda*, 131 F.3d 818, 827-28 (9th

13    Cir. 1997) (examination of due process claim requires court to assess whether a constitutionally

14    protected liberty interest is at stake, and, if so, whether inmate received the process he was due).

15    The court can find no other legal issue that implicates Mustafaa's state of mind.

16    Curiously, defendants do not argue that a verbal stipulation with plaintiff endowed

17    Mustafaa with the requisite personal knowledge, despite the fact that Mustafaa claims he

18    "stipulated or took into consideration" the challenged assertions about Walker.  (ECF No. 628

19    Exh. 1 at 1-2.)    Although a stipulation would imply that plaintiff discussed and agreed to the

20    challenged assertions, the mere "consideration" of those facts asserted does not, so it is entirely

21    unclear whether plaintiff and Mustafaa reached a verbal agreement.  (*See id.*)  Defendant's

22    opposition to plaintiff's motion to strike only adds to the ambiguity, as it states that Mustafaa has

23    "personal knowledge of his decision-making process" rather than personal knowledge of a verbal

24    stipulation with plaintiff.  (ECF No. 632 at 3.)

25    The difference is significant.  The occurrence of a stipulation between Mustafaa and

26    plaintiff arguably constitutes a "fact or circumstance" relevant to whether Mustafaa is entitled to

27    qualified immunity, while Mustafaa's internal beliefs about Walker's observations of the

28    underlying incident are irrelevant and inadmissible, as discussed above.  In light of plaintiff's flat

11

1    denial of entering into any agreement about Walker's potential testimony (ECF No. 628), and

2    defendants' apparent acquiescence (ECF No. 632), the court will not explore this line of

3    reasoning further.  *See* FED. R. CIV. P. 56(c)(2) advisory committee's note ("The burden is on the

4    proponent to show that the material is admissible as presented or to explain the admissible form

5    that is anticipated").

6         Accordingly, the court grants plaintiff's motion to strike (ECF No. 628) paragraph seven

7    of Mustafaa's declaration, as attached to defendants' motion for summary judgment (ECF No.

8    608) and defendants' opposition to plaintiff's motion for summary judgment (ECF No. 620).  *See*

9    *Hall v. CIA*, 538 F. Supp. 2d 64 (2008).

10   **C.    Summary Judgment**

11        **1.    Schultz**

12             *i.    Exhaustion*

13        As a threshold matter, the court considers defendants' argument that plaintiff failed to

14   exhaust his retaliation claim against Schultz.  *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014)

15   (The question of exhaustion "should be decided, if feasible, before reaching the merits of a

16   prisoner's claim").

17        The PLRA requires "proper exhaustion" of an inmate's claims.  *Woodford v. Ngo*, 548

18   U.S. 81, 90 (2006).  Proper exhaustion means an inmate must "use all steps the prison holds out,

19   enabling the prison to reach the merits of the issue."  *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th

20   Cir. 2009) (citing *Woodford*, 548 U.S. at 90).  Thus, exhaustion "demands compliance with an

21   agency's deadlines and other critical procedural rules because no adjudication system can

22   function effectively without imposing some orderly structure on the course of its proceedings."

23   *Woodford*, 548 U.S. at 90–91.

24        Administrative Regulation ("AR") 740 governs the grievance process at NDOC

25   institutions.  Defendants provide a prior version of AR 740 in effect at the time plaintiff filed his

26   relevant grievances.  (*See* ECF No. 611 Exh. 20.)  An inmate must grieve through all three levels:

27   (1) informal; (2) first level; and (3) second level.  (*Id.* at 10.)  AR 740 requires that "all

28   documentation and factual allegations available to the inmate must be submitted at [the informal

grievance] level" and further provides that relevant documentation must be supplemented to the first and second level. (*Id.* at 14, 16, 17.) Once a merits decision has been rendered on a second-level grievance, the NDOC administrative grievance process is considered exhausted. *Brown v. Valoff*, 422 F.3d 926, 943 (9th Cir. 2005).

Defendants first contend that plaintiff failed to exhaust his retaliation claim against Schultz because plaintiff's grievances do not contain the factual allegations that the court relied on in its screening of plaintiff's claim. (ECF No. 608 at 16-17.) Specifically, the court found that plaintiff stated a cognizable retaliation claim based on his allegations that Schultz impermissibly targeted plaintiff on June 1, 2007 "in retaliation for plaintiff having filed a grievance against a correctional officer on May 28, 2007." (ECF No. 15 at 8.) Defendants attach copies of plaintiff's grievances to demonstrate that plaintiff never mentioned the May 28, 2017 grievance upon which his retaliation claim is predicated. (ECF No. 608 at 17.)

In response, plaintiff provides grievance numbers 2006-262-5497 and 2006-263-5770. (See ECF No. 627 Exh. 1-A.) Both grievances plainly assert that Schultz retaliated against plaintiff because plaintiff filed the May 28, 2017 grievance. (*Id.*) Contrary to defendants' position, plaintiff's grievances provided proper notice to SDCC officials of the facts underlying his retaliation claim against Schultz.

Defendants next attempt to argue that plaintiff did not fully exhaust grievance numbers 2006-262-5497 and 2006-263-5770 through the second level. (ECF No. 629). However, defendants raise this argument for the first time in their reply brief. The court declines to confer upon defendants, already represented by counsel, the advantage of raising an argument without the possibility of rebuttal. *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 952 n.10 (9th Cir. 2002) (noting that courts "ordinarily decline to consider arguments raised for the first time in a reply brief") (quoting *United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (per curiam).

Accordingly, plaintiff succeeds in overcoming defendants' haphazard exhaustion defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007) (ruling that defendants bear the burden of proving that a plaintiff has failed to exhaust available administrative remedies).

*ii.    Retaliatory Motive*

Defendants also argue that summary judgment is proper against plaintiff's retaliation claim against Schultz because it fails on the merits.  (ECF No. 608 at 18-21.)  In defendants' view, plaintiff's claim that Schultz acted on retaliatory motive is "mere conjecture," unsupported by facts that could support an inference otherwise.  (*Id.* at 18.)

It is well established in the Ninth Circuit that prisoners may seek redress for retaliatory conduct by prison officials under § 1983.  *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).  "Prisoners have a First Amendment right to file grievances against prison officials and be free from retaliation for doing so."  *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).  A retaliation claim has five elements: (1) a state actor took some adverse action against the inmate (2) because of (3) the inmate's protected First Amendment conduct, and that the action (4) chilled the inmate's exercise of his First Amendment rights and (5) did not reasonably advance a legitimate correctional goal.  *Rhodes*, 408 F.3d at 567–68.

Plaintiff claims that on June 1, 2007, Schultz approached plaintiff's cell regarding its arrangement in retaliation for plaintiff's previous grievance activity.  (ECF No. 16.)  However, as defendants point out, plaintiff is "in the difficult position of proving that Sergeant Schultz committed retaliatory misconduct on the basis of plaintiff's grievances *against another officer*, here one Officer Kim."  (ECF No. 628 at 20); (*see* ECF No. 628 Exh. 12 at 40-41) (clarifying that the officer in question was Officer Kim ("Kim")).  While the evidence shows that plaintiff filed two grievances against Kim on May 28, 2017 (ECF No. 598-1 at 5-13), there is no direct evidence Schultz was aware of either grievance.  Plaintiff concedes that Schultz did not speak to plaintiff about Kim, or his grievances, prior to June 1, 2007.  (ECF No. 627 at 26.)  Plaintiff also concedes that he arrived at the conclusion that Schultz retaliated against him on behalf of Kim by "deduction," rather than by any direct evidence of Schultz's retaliatory animus.  (*Id.* at 27-28.)

The only evidence plaintiff provides to support his deduction are a Notice of Charges filed by Kim and signed by Schultz, and plaintiff's declaration that he witnessed Schultz and Kim interact.  (ECF No. 627 at 27, Exh. 82, 86.)  Plaintiff asserts only that he observed Schultz and

1    Kim supervise "pat downs" near one another, talk to one another, and "stare" at plaintiff on

2    "various occasions." (ECF No. 627 at 82.) This evidence is sufficient to establish that Schultz

3    and Kim knew one another. But, whether Schultz and Kim knew each other is not in issue.

4    Plaintiff provides insufficient evidence from which a reasonable jury could infer that Schultz and

5    Kim's relationship was sufficiently strong, either in the bonds of friendship or employment, so as

6    to necessarily entail that Schultz knew of plaintiff's grievances against Kim, and, as a result, was

7    motivated to retaliate against plaintiff for filing those grievances. *See Adams v. Rice*, 40 F.3d 72,

8    74 (4th Cir. 1994) ("Claims of retaliation must therefore be regarded with skepticism, lest federal

9    courts embroil themselves in every disciplinary act that occurs in state penal institutions.").

10        Plaintiff's declaration and the document signed by both Kim and Schultz are simply not

11    enough to establish a causal chain linking plaintiff's grievances against Kim to Schultz's actions.

12    Were the court to hold otherwise, any claim of retaliation against a prison official could survive

13    summary judgment so long as an inmate had previously filed a grievance against that official's

14    coworker. Because plaintiff is unable to prove an essential element of his retaliation claim, the

15    court recommends that defendants' motion for summary judgment on plaintiff's retaliation claim

16    against Schultz claim be granted. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099,

17    1102 (9th Cir. 2000). For this reason, the court recommends that plaintiff's motion for summary

18    judgment on his retaliation claim be denied.

19            **2. Berry**

20                    *i. Retaliation*

21        In reviewing plaintiff's motion for summary judgment and opposition to defendants'

22    complaint, it is apparent that plaintiff has misunderstood the court's screening as allowing him to

23    proceed on a retaliation claim against Berry. To the contrary, the court was unequivocal in

24    characterizing plaintiff's claim as a due process challenge (ECF No. 15 at 10), and ordering that

25    he proceed on a due process claim against Berry (ECF No. 15 at 13). In reaching this conclusion,

26    the court focused only on plaintiff's allegations that Berry filed fraudulent charges to cover up the

27    excessive force he exercised upon plaintiff. (*Id.* at 10.) It did not comment on plaintiff's

28    allegation that Berry filed the charges in retaliation for plaintiff's threat to sue Berry, nor any

1   other allegations that could support a retaliation claim.  As such, plaintiff does not have a

2   retaliation claim against Berry currently before the court.

3          Furthermore, defendants would be significantly prejudiced if the court allowed plaintiff to

4   re-characterize his claim as a retaliation claim against Berry.  They have been operating under the

5   assumption that plaintiff's claim against Berry is a due process claim for nearly seven years of

6   litigation.  Considering plaintiff's demonstrated capacity to litigate his claims, it is unclear why

7   he failed to notify the court of his belief that it misinterpreted his retaliation claim sooner.  (*See*

8   ECF No. 20) (motion for reconsideration of court's screening order does not discuss retaliation

9   claim); (ECF No. 24) (denying motion for reconsideration).  The court declines to consider his

10  retaliation claim against Berry at this late stage.  *See Arizona v. California*, 460 U.S. 605, 618

11  (1983) (law of the case doctrine "posits that when a court decides upon a rule of law, that decision

12  should continue to govern the same issues in subsequent stages in the same case"); *see also*

13  *School Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)

14  (reconsideration is appropriate only in rare circumstances, such as where the court's previous

15  order "committed clear error or the initial decision was manifestly unjust").

16         Defendants move to dismiss the extant due process claim against Berry on the grounds

17  that, as a matter of law, there is no due process right to be free from false charges. (ECF No. 608

18  at 21.)  The court agrees.  So long as a prisoner receives proper procedural due process, a claim

19  based on the falsity of disciplinary charges does not stat a constitutional claim.  *See Sprouse v.*

20  *Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir.

21  1986).  Plaintiff attempts to distinguish his due process claim by asserting that Berry acted with

22  retaliatory motive (ECF No. 627 at 29-30), but intent is not an element of a procedural due

23  process violation.  *See Sandin v. Conner*, 515 U.S. 472, 478 (1995); *Daniels v. Williams*, 474 U.S.

24  327, 332 (1986) (intentionality considered in assessing whether procedural due process must be

25  provided).

26         Considering Berry's alleged retaliatory motive at this stage would functionally transform

27  plaintiff's due process claim into a retaliation claim and, therefore, serve as an impermissible end

28  run to the court's screening order.  Accordingly, plaintiff has failed to carry his burden to raise a

1  genuine dispute, so the court recommends that defendants' motion for summary judgment against

2  plaintiff's due process claim against Berry be granted.    For this reason, the court recommends

3  that plaintiff's motion for summary judgment on this retaliation claim be denied.

### 3.  Williams and Cox

5  In Count II, plaintiff claims that Williams and Cox violated his Fourteenth Amendment

6  right to due process by ratifying Mustafaa's decision to deny plaintiff's request to call a witness at

7  his disciplinary hearing.  (ECF No. 16 at 31.)  The basis of plaintiff's theory of ratification is that

8  Williams and Cox reviewed and denied plaintiff's grievances against Mustafaa.  (*Id.*)  Defendants

9  counter that Williams and Cox are entitled to summary judgment on the basis of qualified

10  immunity.  (ECF No. 608 at 12-13.)

11  Qualified immunity protects government officials "from liability for civil damages insofar

12  as their conduct does not violate clearly established statutory or constitutional rights of which a

13  reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

14  Qualified immunity protects government officials from liability for good faith misjudgments and

15  mistakes.  *See Butz v. Economou*, 438 U.S. 478, 507 (1978).  It "provides ample protection to all

16  but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S.

17  335, 341 (1986).  To determine if qualified immunity applies, the court considers whether the

18  facts alleged by the plaintiff set forth a violation of a constitutional right. *Saucier v. Katz*, 533

19  U.S. 194, 201 (2001).  The court also considers whether the right at issue was clearly established

20  at the time of the defendant's alleged misconduct.  *Id.*

21  It is plaintiff's burden to demonstrate that a right was "clearly established" at the time of

22  the alleged misconduct.  *Green v. Camreta*, 588 F.3d 1011, 1031 (9th Cir. 2009).  The law is

23  clearly established when "'[t]he contours of [a] right [are] sufficiently clear' that every

24  'reasonable official would have understood that what he is doing violates that right.'"  *Ashcroft v.*

25  *al-Kidd*, 563 U.S. 731 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  While

26  an identical on-point case is not necessary, precedent must decide the constitutional question

27  "beyond debate."  *Id.*

28

1    The United States Supreme Court has repeatedly stressed that when analyzing whether the

2    law is clearly established, the court must not "define clearly established law at a high level of

3    generality." *Id.* at 2084.   Instead, the Court must identify clearly established law which is

4    "particularized" to the facts of the case. *Anderson*, 483 U.S. 635, 640 (1987). A prison official

5    should prevail on qualified immunity "if the right asserted by the plaintiff was not 'clearly

6    established' or the officer could have reasonably believed that his particular conduct was lawful."

7    *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).

8    Nothing about Williams and Cox's involvement in reviewing and responding to Plaintiff's

9    grievances indicates that it would have been obvious to a reasonable prison official that affirming

10   Mustafaa's decision to deny plaintiff a witness at his disciplinary hearing would violate plaintiff's

11   due process rights.   The record shows that Williams and Cox discharged their duties to review

12   plaintiff's grievance against Mustafaa and to respond to Plaintiff's grievances in a professional

13   manner.   (*See, e.g.*, ECF No. 608 Exh. 17-19.)   Williams and Cox based their decision to affirm

14   the denial of plaintiff's witness request on Mustafaa's finding that the witness was unavailable to

15   testify.   (ECF No. 608 Exh. 19.)   Williams and Cox reasonably believed Mustafaa's finding and,

16   as such, could have reasonably believed that Walker's unavailability justified Mustafaa's denial

17   of plaintiff's witness request.   *See Ponte v. Real*, 471 U.S. 491, 495 (1985) (recognizing that

18   "inmate's right to present witnesses is necessarily circumscribed by the penological need to

19   provide swift discipline in individual cases").   Plaintiff has not cited any clearly-established law

20   that would have put Williams and Cox on notice that affirming Mustafaa's decision would violate

21   the Constitution; therefore, Williams and Cox are entitled to qualified immunity.   For this reason,

22   defendants' motion for summary judgment should be granted, and plaintiff's motion for summary

23   judgment should be denied.

24       **4.  Mustafaa**

25   The Due Process Clause of the Fourteenth Amendment prohibits states from depriving

26   individuals of "life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV,

27   § 1. Courts analyze procedural due process claims in two parts.  First, the court must determine

28   whether the plaintiff possessed a protected interest.  *Wilkinson v. Austin*, 545 U.S. 209, 221

1  (2005).  If so, the court compares the required level of process with the procedures the defendant

2  observed.  *Brown v. Ore. Dep't of Corrs.*, 751 F.3d 983, 987 (9th Cir. 2014).  To prevail on a

3  claim, plaintiff must have a protected liberty interest, and the defendant's procedures must be

4  constitutionally inadequate.  *Id.*

5      The parties do not dispute that plaintiff had a constitutionally protected liberty interest at

6  stake in his disciplinary hearing.  The parties also appear to be in agreement that, as a matter of

7  law, the Due Process Clause provided plaintiff with a qualified right to call a witness at his prison

8  disciplinary proceedings.  *See Wolff v. McDonnell*, 418 U.S. 539, 566-67 (1974); *accord Ponte v.*

9  *Real*, 471 U.S. 491, 499 (1985) (recognizing inmate's right to call witnesses as "limited one").

10  The only issue before the court is whether plaintiff had a protected right to call Walker as a

11  witness, given the factual circumstances at the time.

12      Defendants first argue that plaintiff did not have a due process right to call Walker as a

13  witness because Mustafaa found that Walker's testimony would be unnecessary. The court rejects

14  this argument because it relies on portions of Mustafaa's declaration that the court has stricken as

15  inadmissible.  *See infra* Part II.B.  Furthermore, defendants attempt to argue that Mustafaa

16  properly found Walker's testimony unnecessary on the basis that plaintiff was given an

17  opportunity to "tell his side of the story," and Walker would only corroborate plaintiff's version

18  of events.  (ECF No. 629 at 8.) The court must reject this reasoning, as a core function of witness

19  testimony is to corroborate the testimony of the accused.  A holding that permitting an inmate to

20  "tell his side of the story" obviates the need for a witness would create an exception that destroys

21  the rule.

22      Next, defendants contend that Mustafaa properly found that Walker was unavailable due

23  to regulations designed for safety and security reasons.  Specifically, defendants state:

24      [A]t the time of the hearing, Inmate Walker was being housed in a general
        population unit, and Plaintiff was being housed in a segregated housing unit; that
25      segregated housing units are typically inaccessible to general population inmates;
        that Inmate Walker could therefore not be physically present at the hearing; and
26      that Inmate Walker could not participate by phone because the phone in the Unit 8
        room where the hearing was conducted did not have speakerphone capabilities and
27      also because the only phone in Inmate Walker's general population unit was in
        the control bubble which is an area where inmates are not authorized to be present.
28

(ECF No. 629 at 6-7.)  In response, plaintiff cites to Defendant Williams's admission that Walker "may have been able to be escorted [to Unit 8] but it would be dependent on the circumstances." (ECF No. 598 Exh. 71 at 11-12.)  Defendants appear to argue that this evidence is insufficient to create a genuine dispute as to Walker's availability because plaintiff does not provide evidence that the circumstances would definitively have allowed for Walker to appear at the disciplinary hearing by escort.  (ECF No. 629 at 7.)

The court disagrees.  It is defendants burden to prove that "there was a valid reason for the refusal" of plaintiff's request to call Walker as a witness.  *See Ponte*, 471 U.S. at 504.  Defendants adduce evidence to establish that Walker could neither physically attend the disciplinary hearing in Unit 8, nor access a phone to appear telephonically, due to security regulations. (ECF No. 608 Exh. 21, 24.)  However, plaintiff's citation to Williams's declaration establishes that, "dependent on the circumstances," Walker could have appeared under escort; defendants fail provide evidence to refute that possibility, or explain that the circumstances were outside the control of prison officials, at their own peril.  A reasonable jury could infer that if Walker could have appeared as witness if accompanied by escort, then he was not unavailable due to security reasons but because the defendants failed to schedule his disciplinary hearing under circumstances where his right to call a witness could be exercised.  Therefore, the court recommends that defendants motion for summary judgment be denied as to plaintiff's due process claim against Mustafaa.

While plaintiff has raised a genuine dispute as to whether Walker was unavailable to testify at his disciplinary hearing for security reasons, the evidence is not so compelling that a reasonable jury must find that Walker was available to testify under escort.  Plaintiff's motion for summary judgment must be denied as well.  Finally, qualified immunity is inappropriate because whether Mustafaa made a reasonable mistake as to Walker's availability "may depend upon the jury's resolution of disputed facts and the inferences it draws therefrom."  *See Lolli v. Cty. of Orange*, 351 F.3d 410, 421 (9th Cir. 2003 (quoting *Santos v.* Gates, 287 F.3d 846, 855 n.12 (9th Cir. 2002)).  Therefore, the court concludes that Mustafaa is not entitled to qualified immunity.

## IV.    CONCLUSION

Based upon the foregoing, the court concludes that defendants have demonstrated that there are no genuine issues of material fact for trial with respect to the claims against Schultz, Berry, Williams, and Cox; thus, defendants' motion for summary judgment should be granted as to these defendants.  However, the court finds that a triable issue of fact exists as to plaintiff's due process claim against Mustafaa. For this reason, the court denies both plaintiff and defendants' motion for summary judgment regarding this claim.  Additionally, plaintiff's motion to exclude is denied, while plaintiff's motion to strike is granted.

The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This Report and Recommendation is not an appealable order and any notice of appeal under Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VII.    RECOMMENDATION

**IT IS THEREFORE ORDERED** that plaintiff's motion to exclude (ECF No. 617) be **DENIED;**

**IT IS FURTHER ORDERED** that plaintiff's motion to strike (ECF No. 628) be **GRANTED;**

**IT IS FURTHER RECOMMENDED** that the defendants' motion for summary judgment (ECF No. 608) be **GRANTED** as to defendants Schultz, Berry, Williams, and Cox;

**IT IS FURTHER RECOMMENDED** that the defendants' motion for summary judgment (ECF No. 608) be **DENIED** as to defendant Mustafaa;

1   **IT IS FURTHER RECOMMENDED** that the plaintiff's motion for summary judgment

2 (ECF No. 598) be **DENIED** in its entirety.

3 **DATED**: June 14, 2018.

4                             

5                 **UNITED STATES MAGISTRATE JUDGE**